**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

LYNDON MARLON BAPTIST, AKA L-
Dog,
            *Defendant-Appellant.*

No. 09-50315

D.C. No.
2:08-cr-00848-
RHW-2

OPINION

Appeal from the United States District Court
for the Central District of California
Robert H. Whaley, District Judge, Presiding

Argued and Submitted
March 8, 2011—Pasadena, California

Filed June 2, 2011

Before: Betty B. Fletcher, Stephen Reinhardt, and
Kim McLane Wardlaw, Circuit Judges.

Per Curiam Opinion

7299

## COUNSEL

Jean-Claude Andre, AUSA, Los Angeles, California, for the plaintiff-appellee.

Brian A. Newman, Redondo Beach, California, for the defendant-appellant.

## OPINION

PER CURIAM:

Lyndon Baptist appeals his statutorily mandated, five-year minimum sentence following his guilty plea to conspiracy to possess crack cocaine with intent to distribute, and distribution of at least five grams of crack cocaine, under 21 U.S.C. §§ 846 and 841(a)(1). The district judge, expressing his intention to "make as stable a record as [he could] for any other court that might look at this [case]," stated that he "did not believe [that the statutorily mandated minimum] is a just sentence" because its imposition was "too much," "disproportionate," "wrong from a moral sense," and "an example of the effect of the crack cocaine disparity that adversely affects African Americans," and that his "stomach hurt[ ]" for sentencing to five years in prison a man who did no more than facilitate a "local," fourteen-gram crack cocaine transaction between his cousin and an informant. On August 3, 2010, while this appeal was pending, President Obama signed into law the Fair Sentencing Act, enacted "[t]o restore fairness to [f]ederal cocaine sentencing." Pub. L. No. 111-220, 124 Stat. 2372 (amending 21 U.S.C. § 841) ("the Act"). The Act reduced the 100-to-1 crack-powder sentencing disparity under § 841(b)(1), "now recognized by virtually everyone, including Congress, to have imposed unnecessarily and unfairly severe mandatory sentences." *United States v. Acoff*, 634 F.3d 200, 205 (2011) (Lynch, J., concurring); *see also* Drug Sentencing Reform and Cocaine Kingpin Trafficking Act of 2009, H.R. 265 § 2(16), Findings, 111th Cong. (as introduced in House, Jan. 7, 2009) ("The unwarranted sentencing disparity not only overstates the relative harmfulness of the two forms of the drug and diverts Federal resources from high-level drug traf-

fickers, but it also disproportionately affects the African-American community.").

The Fair Sentencing Act amended the statutory provisions under which Baptist had been sentenced by increasing from five to twenty-eight grams the amount necessary to trigger a five-year mandatory minimum sentence, and from fifty grams to 280 grams the amount of crack necessary for a ten-year mandatory minimum. *See* § 2(a), 124 Stat. at 2372 (amending 21 U.S.C. § 841). The practical effect of the Act on minor drug offenders like Baptist was to eliminate the punitive requirement that a mandatory sentence of any duration be imposed for their involvement in the distribution of a minimal amount of crack cocaine.

There is no dispute that the mandatory minimum would not apply to Baptist if the transaction to which he pled guilty had occurred after the date on which the President signed the Act amending 21 U.S.C. § 841. The transaction at issue in this case, however, occurred prior to the date the Act was signed into law, as did the imposition of Baptist's sentence. He seeks to have his pre-enactment sentence for his pre-enactment transaction vacated with instructions for resentencing pursuant to the Fair Sentencing Act. He argues that the Act should be applied retroactively to reduce the harsh and unfair sentence imposed on him before the Act's passage under the version of § 841 that Congress has since modified.

**[1]** We review de novo the question of law, whether a federal statute applies to a sentence that was imposed prior to the date of the new statute's enactment. *See Saravia-Paguada v. Gonzales*, 488 F.3d 1122, 1129 n.10 (9th Cir. 2007). The governing statute is the General Savings Statute, 1 U.S.C. § 109. It provides that

> [t]he repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repeal-

> ing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

The Supreme Court has held that the General Savings Statute operates to prevent the retroactive application of an ameliorative statute like the Fair Sentencing Act, absent an expression of congressional intention to apply it to pre-enactment conduct. *See Warden, Lewisburg Penitentiary v. Marrero*, 417 U.S. 653, 661 (1974) (holding that § 109 generally applies to "bar application of ameliorative criminal sentencing laws repealing harsher ones in force at the time of the commission of an offense"); *id.* at 659 n.10 (noting an exception to the general rule where congressional intent can be said by "fair implication or expressly to conflict with § 109" (citing *Great N. Ry. Co. v. United States*, 208 U.S. 452, 465-66 (1908) (holding that the General Savings Statute "cannot justify a disregard of the will of Congress as manifested either expressly or by necessary implication in a subsequent enactment")). Supreme Court precedent requires us to uphold Baptist's sentence, which was imposed under the former sentencing regime, unless the Fair Sentencing Act expressly or impliedly provides for its reduction. *See United States v. Avila-Anguiano*, 609 F.3d 1046, 1050 (9th Cir. 2010) ("We have applied the general saving statute broadly in criminal and civil contexts.").

**[2]** The plain language and legislative history of the Fair Sentencing Act give no indication that the less harsh sentences for which the Act provides apply to defendants whose conduct and sentencing occurred before the law's enactment. Certainly, there is no express provision or statement in the Fair Sentencing Act providing for a post-Act reduction in pre-enactment sentences such as Baptist's. Nor do we find in the Act itself the requisite implication that it was meant to apply to such sentences. There are no committee reports or other

documents attesting to congressional intent with respect to the reduction of sentences already imposed.[1]

We cannot derive congressional intention that the Act apply to sentences already imposed simply from its grant of "emergency authority" to the Sentencing Commission to promulgate guidelines "not later than 90 days after the date of [the Act's] enactment." Fair Sentencing Act § 8, 124 Stat. at 2374. For these emergency powers apply only to the Sentencing Guidelines and not to the higher minimum sentences statutorily mandated by the old sentencing regime and already imposed under it. Moreover, the Commission's "conforming

---

[1]All we have are the statements of individual senators and representatives that the sentencing disparity in the prior law had no scientific or penological justification and resulted in racially unjust consequences. See, e.g., 155 Cong. Rec. S10488-01, S10491, 2009 WL 3319524 (daily ed. Oct. 15, 2009) (statement of Sen. Durbin that "[w]e now know the assumptions that led us to create this disparity were wrong"); 156 Cong. Rec. H6196-01, *H6198, 2010 WL 2942883 (daily ed. July 28, 2010) (statement of Rep. James E. Clyburn that the crack-powder disparity is "unjust and runs contrary to our fundamental principles of equal protection under the law"). That greater congressional condemnation of the now-defunct sentencing regime appears nowhere in the Act's findings or committee reports is perplexing, given that the U.S. Sentencing Commission informed Congress in four consecutive reports between 1995 and 2007 that empirical data did not support the assumption that crack was more harmful than cocaine, whether in terms of drug trafficking related violence, prenatal effects, or use among youth; and that the 100:1 ratio between crack and powder cocaine sentencing had a radically disproportionate effect on blacks who account for over eighty percent of defendants convicted of crack offenses in federal court. See United States Sentencing Commission, Report to Congress: Cocaine and Federal Sentencing Policy (May 2007, May 2002, Apr. 1997, Feb. 1995). Even the Attorney General had made clear that "[t]here is no law enforcement or sentencing rationale for the current disparity between crack and cocaine powder offenses." Statement of the Attorney General on Senate Judiciary Committee's Approval of the Fair Sentencing Act (March 11, 2010). It is "simply wrong" and "plainly unjust," he explained, "to hand down wildly disparate prison sentences for materially similar crimes . . . that disproportionately . . . affect[ ] some racial groups." Attorney General Eric Holder, Remarks at the D.C. Court of Appeals Judicial Conference (June 19, 2009).

amendments to the [non-mandatory] Federal sentencing guidelines" would take place well after, rather than before, the date of the Act's enactment. *Id*.

**[3]** Nor can we infer congressional intent of the Act's retroactive application to sentences such as Baptist's from a letter sent by its sponsors to the Attorney General three months after the Act's enactment, asking him "to apply its modified mandatory minimums to all defendants *who have not yet been sentenced*, including those whose conduct predates the legislation's enactment." Letter from Senators Durbin and Leahy to Attorney General Holder, Nov. 17, 2010 (emphasis added). In urging application of the Act to defendants who had not yet been sentenced, Senators Durbin and Leahy in effect conceded that it did not apply to defendants like Baptist who had already been sentenced under the old law. Also, the Acting Assistant Attorney General's reply sets forth the Justice Department's position that the Fair Sentencing Act "applies only prospectively, that is, solely to offense conduct occurring on or after the date of its enactment." Letter from Acting Assistant Attorney General Agrast to Senators Durbin and Leahy, Apr. 25, 2011.

**[4]** As to Baptist's constitutional challenges, our court rejected the Cruel and Unusual Punishment challenge to the pre-Act mandatory minimum sentences in *United States v. Hoyt*, 879 F.2d 505, 512-14 (9th Cir. 1989). We rejected the Equal Protection challenge to the crack-powder sentencing disparity in *United States v. Harding*, 971 F.2d 410, 412-14 (9th Cir. 1992), and we did so again, in *United States v. Dumas*, 64 F.3d 1427, 1429-32 (9th Cir. 1995), after the publication of the first Sentencing Commission Report. *See* United States Sentencing Commission, Report to Congress: Cocaine and Federal Sentencing Policy (Feb. 1995). *Dumas* also rejected a challenge to the crack-powder sentencing disparity based on the Fifth Amendment's Due Process Clause. *See* 64 F.3d at 1429. Neither the intervening enactment, in itself, of the Fair Sentencing Act, nor the evidence in the

Act's legislative history concerning the racially discriminatory and intolerably harsh character of the old sentencing regime, *see supra* 7305 n.1, is sufficient in itself to "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). Circuit precedent and congressional silence thus foreclose a constitutional challenge under the Fifth, Eighth, or Fourteenth Amendments to the five-year mandatory minimum sentence to which Baptist was sentenced under the old law.

Like every other circuit court to have considered this question, we can find no evidence that Congress intended the Fair Sentencing Act to apply to defendants who had been sentenced prior to the August 3, 2010 date of the Act's enactment. *See United States v. Bullard*, __ F.3d __, 2011 WL 1718894, at *9-11 (4th Cir. May 6, 2011); *United States v. Goncalves*, __ F.3d __, 2011 WL 1631649, at *5-7 (1st Cir. Apr. 28, 2011); *Acoff*, 634 F.3d at 202; *United States v. Doggins*, 633 F.3d 379, 384 (5th Cir. 2011); *United States v. Reevey*, 631 F.3d 110, 114-15 (3d Cir. 2010); *United States v. Lewis*, 625 F.3d 1224, 1228 (10th Cir. 2010); *United States v. Brewer*, 624 F.3d 900, 909 n.7 (8th Cir. 2010); *United States v. Bell*, 624 F.3d 803, 814 (7th Cir. 2010); *United States v. Gomes*, 621 F.3d 1343, 1346 (11th Cir. 2010) (per curiam); *United States v. Carradine*, 621 F.3d 575, 580 (6th Cir. 2010). Accordingly, we are compelled to affirm Baptist's five-year mandatory minimum sentence. That is what the law currently requires, and we have no alternative but to follow it.

**[5]** As individual judges, we believe that the result that we reach in this case — affirming a sentence of sixty months' imprisonment for a minor drug offense under a law that Congress appears to have concluded was groundless and racially discriminatory — subverts justice and erodes the legitimacy of the criminal justice system.[2] We are without power, how-

---

[2]It would be especially egregious to require judges "to continue to require that courts impose unfair and unreasonable sentences on those

ever, to undo the injustice that we are compelled to authorize when we affirm the congressionally mandated sentence that the district judge understandably declared made his "stomach hurt[ ]" because it was "disproportionate [with respect to] African Americans" and "wrong from a moral sense." We agree wholeheartedly with the district judge. Nevertheless, unless the Supreme Court revises its view of the effect of the General Savings Statute as it applies to ameliorative sentencing laws, only Congress is able to achieve the Fair Sentencing Act's promise "[t]o restore fairness to [f]ederal cocaine sentencing," by amending the Act so as to make it retroactive for all defendants whose sentences had not become final as of the date of its enactment.

**AFFIRMED.**

---

offenders" who have not yet been sentenced. *Acoff*, 634 F.3d at 205 (Lynch, J., concurring); *see also United States v. Douglas*, 746 F.Supp. 2d 220, 229 (D. Me. Oct. 27, 2010) ("What possible reason could there be to want judges to continue to impose new sentences that [Congress has declared to be unfair] over the next five years while the statute of limitations runs?"); *United States v. Parks*, No. 8:10CR225, 2010 WL 5463743, at *7 (D. Neb. Dec. 28, 2010) (Because "[t]he government has not identified any valid congressional interest that would be served by continuing to apply the now discredited and repudiated 100-to-1 ratio to those defendants who would now be categorized as minor crack offenders[,]" "[t]o continue to sentence defendants under a formula that is uniformly regarded as unfair and unjust" "frustrate[s] the expressed congressional goal[ ] of remedying racially discriminatory impact.").