10-0713-cr
United States v. VanHoesen

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 9th day of December, two thousand eleven.

PRESENT: JOHN M. WALKER, JR.,
REENA RAGGI,
DEBRA A. LIVINGSTON,
*Circuit Judges*.

-----------------------------------------------------------------------

UNITED STATES OF AMERICA,
*Appellee*,

v.                                                                      No. 10-0713-cr

JOHN VANHOESEN, a.k.a. Johnny Cat,
*Defendant-Appellant*,

ERNEST CONLEY, a.k.a. Loc, a.k.a. E-Loc, a.k.a. EZ-Loc, HECTOR DEJESUS, a.k.a. Hec, MARK LEWIS, SHATIA WRIGHT, TRACY BATTLE, a.k.a. Grady, KEYMON DOBBS, ALAN SKORUPSKI, KAMAR HARRISON, a.k.a. Dolo, JOHN WELCOME, a.k.a. Dubbs, LAVAR HOUTMAN, a.k.a. God of All Gods, a.k.a. Villain, a.k.a. God, KHALIL BARNES, a.k.a. Crazy K, RAHMEL CARTER, a.k.a. Dooder, AMIN COWAN, a.k.a. Ah, ANTHONY FENNER, a.k.a. Ant, AHMAD FLEMING, a.k.a. Silky, RAYQUINSHAWN HARRISON, a.k.a. Pilla, TAKEEM HEATH, a.k.a. Ty-Nasty, LAMEL INMAN, a.k.a. Ghost, a.k.a. Mel, KALI JOHNSON, a.k.a. Hersh, DEAUNTTA MALLOY, a.k.a. Chef D, SANTONIEO

MILLER, JR., a.k.a. Kushawn, a.k.a. Daddy, RAMAAR
MILNER, a.k.a. Bizza, LAJUAN MORALES, a.k.a. Lay
Hoody, a.k.a. Cool, KEMIEK PAYNE, a.k.a. KP, SHABAR
PERKINS, a.k.a. Barsky, TARON ROBINSON, a.k.a.
Turtle, ELQUAN STURDIVANT, a.k.a. L Easy,
SHAMEEK K. THOMAS, a.k.a. Tarzan, a.k.a. Sha,
JOSHUA VANHOESEN, a.k.a. Scarlo, SHAHEEM
WHITE, a.k.a. Double S,

*Defendants.*[*]

--------------------------------------------------------------------------

APPEARING FOR APPELLANT:    DAVID SAMEL, Esq., New York, New York.

APPEARING FOR APPELLEE:    VIJAY SHANKER (Ishan K. Bhaba, Greg D. Andres, Acting Deputy Assistant Attorney General, and Lanny A. Breuer, Assistant Attorney General, *on the brief*), Appellate Section, Criminal Division, United States Department of Justice, Washington, D.C., Carlos A. Moreno and Daniel Hanlon, Assistant United States Attorneys *for* Richard S. Hartunian, United States Attorney, Northern District of New York, Albany, New York.

Appeal from a judgment of the United States District Court for the Northern District of New York (Gary L. Sharpe, *Judge*; David R. Homer, *Magistrate Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of conviction entered on February 11, 2010, is AFFIRMED.

Defendant John VanHoesen ("VanHoesen") appeals from a judgment of conviction entered after a jury trial at which he was found guilty of one count of conspiracy to possess with intent to distribute 50 grams or more of crack cocaine, and three substantive counts of possession of crack cocaine with intent to distribute, on two occasions in amounts of five or

---

[*] The Clerk of Court is directed to amend the official caption to read as shown above.

more grams.  See 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(B), 846, 18 U.S.C. § 2.  Presently incarcerated serving a term of life imprisonment, VanHoesen submits that the district court erred in (1) finding him competent to stand trial, (2) allowing him to represent himself, (3) curtailing his cross-examination of two cooperating witnesses, and (4) sentencing him to life imprisonment.  He further challenges (5) the sufficiency of the evidence to support a jury verdict finding him guilty of conspiracy and, specifically, of a conspiracy to traffic in 50 grams or more of crack cocaine.  We assume the parties' familiarity with the record of prior proceedings and reference such matters only as necessary to explain our decision to affirm.

1.    Defendant's Competence To Stand Trial

We review a district court's finding of defendant competency made after a hearing for clear error and identify none here.  See United States v. Morrison, 153 F.3d 34, 46 (2d Cir. 1998).  There is no question that VanHoesen understood the nature and consequences of the proceedings at issue; the only matter in dispute was his ability to consult with counsel and to assist in preparing his defense.  See Drope v. Missouri, 420 U.S. 162, 171 (1975).  Both the magistrate judge and district judge found VanHoesen competent in these respects after hearing testimony and reviewing conflicting reports indicating that two psychiatrists deemed VanHoesen competent, while a forensic psychologist, who had spent the most time with defendant, did not.  While VanHoesen devotes considerable effort on appeal to arguing that the psychologist's opinion deserved more weight, we identify no clear error in the district court's contrary assessment.  See generally General Elec. Co. v. Joiner, 522 U.S. 136, 143 (1997) (stating that deference to district court's assessment of expert testimony is "hallmark

3

of abuse-of-discretion review"); United States v. Villegas, 899 F.2d 1324, 1341 (2d Cir. 1990) (stating that district court's choice as between two permissible views of the evidence as to competency "cannot be deemed clearly erroneous"); see also United States v. Nichols, 56 F.3d 403, 412 (2d Cir. 1995) (declining to question district court judgment as to competency where one opinion of incompetency conflicts with other expert assessments). Insofar as VanHoesen charges the magistrate judge with an error of fact regarding when Dr. Ryan learned of past criminal proceedings in which VanHoesen was represented by counsel, the point merits little discussion because the magistrate judge's observation as to when this information was obtained was tangential to his larger concern with the minimal weight the psychologist accorded the information, a conclusion that would have obtained in any event. Further, both the magistrate judge and the district judge permissibly relied on their own assessments of VanHoesen's intelligence, knowledge, and deportment in making their independent competency determinations. See United States v. Hemsi, 901 F.2d 293, 295 (2d Cir. 1990); accord United States v. Nichols, 56 F.3d at 411 ("In making a determination of competency, the district court may rely on a number of factors, including medical opinion and the court's observation of the defendant's comportment."). On this record, the district court did not clearly err in finding VanHoesen competent to stand trial.

Nor was the district court required sua sponte to revisit the question of VanHoesen's competency to stand trial when his third appointed counsel indicated an intent to pursue an insanity defense, an announcement that prompted VanHoesen's request for the appointment of new counsel or to represent himself. As the district court correctly observed, an insanity

4

defense relates to a defendant's culpability at the time he allegedly committed the offense, not at the time of trial. See United States v. Valdez, 426 F.3d 178, 185 (2d Cir. 2005). While "a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial," Drope v. Missouri, 420 U.S. at 181, the record of the ensuing hearing on VanHoesen's request to represent himself, see Faretta v. California, 422 U.S. 806, 835-36 (1975), provides no basis for concluding that there was reasonable cause to think that VanHoesen was incompetent to stand trial despite the district court's earlier findings to the contrary. Accordingly, the district court did not abuse its discretion in failing sua sponte to hold a second competency hearing. See United States v. Arenburg, 605 F.3d 164, 169 (2d Cir. 2010).

2.      Defendant's Self-Representation

     a.      Defendant's Competence To Proceed *Pro Se*

VanHoesen submits that even if he was competent to stand trial, he was not competent to conduct his legal defense pro se. The Supreme Court recognized this distinction in Indiana v. Edwards, 554 U.S. 164, 178 (2008), in which it allowed trial courts to deny a defendant the right to proceed pro se in situations in which he is "competent enough to stand trial" under Supreme Court precedent, but "still suffer[s] from severe mental illness to the point where [he is] not competent to conduct trial proceedings by [himself]."[1] VanHoesen

---

[1] Mindful that Edwards specifically reaffirmed Faretta, see Indiana v. Edwards, 554 U.S. at 178, a number of our sister circuits have construed Edwards to confer discretion, not to impose a new duty. See United States v. Turner, 644 F.3d 713, 724 (8th Cir. 2011) ("Edwards clarified that district court judges have discretion to force counsel upon the

5

contends that the district court was unaware of Edwards and mistakenly believed that it lacked discretion to prevent VanHoesen from representing himself. No Edwards argument was raised in the district court. Accordingly, we review only for plain error, see United States v. Irving, 554 F.3d 64, 78 (2d Cir. 2009), and identify none.

VanHoesen's argument derives from the district court's statement during the Faretta hearing that "[u]nder the laws of the United States and under the Constitution, you [i.e., VanHoesen] have an absolute right to represent yourself if you wish to. That right, under the law, can't be tampered with by me." App'x at 332. In context it is clear that the reason the district court thought it could not "tamper" with VanHoesen's right to represent himself was because it found him competent to do so.

At the lengthy Faretta hearing, held on January 5 and 8, 2009, the district court reviewed each component of a criminal trial to ensure VanHoesen's understanding of the charges against which he would have to defend, the procedures that governed trial, and the consequences, both legal and practical, of his failing to comply with such procedures. The

---

discrete set of defendants competent to stand trial but incompetent to represent themselves. It does not mandate two separate competency findings for every defendant who seeks to proceed pro se." (internal citation omitted)); United States v. Berry, 565 F.3d 385, 391 (7th Cir. 2009) ("The Constitution may have allowed the trial judge to block his request to go it alone, but it certainly didn't require it." (emphasis omitted)); United States v. DeShazer, 554 F.3d 1281, 1290 (10th Cir. 2009) ("Thus, while the district court was not compelled to find Mr. DeShazer competent to waive his right to counsel simply because the court had found him competent to stand trial, it does not follow that the district court was absolutely prohibited from doing so."). We need not decide that question because we do not think the record supports VanHoesen's argument that the district court was oblivious to the Edwards distinction.

6

district court told VanHoesen that "the only reason" it was going through this process was to determine "whether I let you represent yourself and under what terms and conditions." Id. at 327. This satisfactorily signals the district court's awareness that a defendant's competence to represent himself may be different from his competence to stand trial. Further, the district court indicated that it had again reviewed the competency hearing transcript as it related to VanHoesen's request to proceed pro se, with this different question in mind. See id. at 414 ("Now, since then, of course, the issue is a little bit different, and the issue is now whether or not you're capable of representing yourself.").

The district court's resolution of the self-representation issue in favor of competency finds ample support in record evidence, including VanHoesen's written submissions to the district court demonstrating his active interest in his own defense, and his testimony and responses to court inquiries indicating that he had performed his own legal research and had a detailed understanding of how a trial works. Further, trial counsel's failure to alert the court to any concerns regarding VanHoesen's competence to represent himself itself "provides substantial evidence of the defendant's competence." Cf. United States v. Kirsh, 54 F.3d 1062, 1071 (2d Cir. 1995) (internal quotation marks omitted) (assessing defendant's competence to stand trial).

Although VanHoesen now submits that his pro se defense was a "travesty" demonstrating "awful judgment," Appellant's Br. at 40, a defendant's failure effectively to represent himself does not demonstrate that he was incompetent to do so under Edwards, and cannot justify denying him his right to proceed pro se. See Faretta v. California, 422 U.S.

7

at 834 ("[A]lthough [a defendant] may conduct his own defense ultimately to his own detriment, his choice must be honored out of that respect for the individual which is the lifeblood of the law." (internal quotation marks omitted)).

b.      Failure To Appoint New Counsel

VanHoesen argues pro se that the district court violated the Sixth Amendment when it failed to appoint a fourth counsel and forced him to represent himself by giving him the impression that if he proceeded with assigned counsel he would be stripped of his right to assist in his own defense.  The point merits little discussion because the record shows that the district court carefully explained to VanHoesen the difference between strategic choices generally decided by counsel and decisions that could be made only by the defendant himself.      To the extent VanHoesen sought new counsel because his third assigned attorney proposed to pursue an insanity defense, the request is properly reviewed in the context of defendant's unwillingness to work with any of the three attorneys appointed for him.  See United States v. Schmidt, 105 F.3d 82, 89 (2d Cir. 1997) (rejecting defendant's claim that "she was coerced into self-representation because the district court, on the eve of trial, refused to replace her third court-appointed attorney").  In sum, a court does not deprive a defendant of the Sixth Amendment right to counsel when it is the defendant himself who creates the conflicts that result in a breakdown of attorney-client communication.  See generally Morris v. Slappy, 461 U.S. 1, 14 (1983) (holding that there is no right to a "meaningful attorney-client relationship").

8

3.      Sufficiency of the Evidence

Having failed to secure acquittal pursuant to Federal Rule of Criminal Procedure 29, VanHoesen argues that the evidence was insufficient to support his conspiracy conviction. While our standard of review is de novo, see United States v. Pizzonia, 577 F.3d 455, 462 (2d Cir. 2009), "we view the evidence in the light most favorable to the government, drawing all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility," United States v. Hawkins, 547 F.3d 66, 70 (2d Cir. 2008) (internal quotation marks omitted). "We will sustain the jury's verdict so long as any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (internal quotation marks, citation, and emphasis omitted).

a.      Distribution Conspiracy

VanHoesen argues that no rational juror could have found that he was a member of the charged drug-distribution conspiracy because the evidence established only a buyer-seller relationship between himself and Ernest Conley. See id. at 71-72. He is wrong. The record indicates that in his first conversation with Conley, VanHoesen solicited crack from the established supplier by indicating that his purpose was to sell the drugs for a profit. Further, VanHoesen implied an ongoing relationship when he told Conley that he already had identified a ready market of customers. Conley himself confirmed that he fronted the first quantity of drugs to VanHoesen with the understanding that he would be distributing them, and in order to encourage future transactions. Indeed, the two men would engage in three transactions over two days. The totality of these circumstances would permit a reasonable

9

jury to conclude that the men's relationship went beyond that of an arms-length buyer and seller, see United States v. Parker, 554 F.3d 230, 236 (2d Cir. 2009) (noting that where transferor is genuinely indifferent to the use the transferee intends to make of drugs, "[t]here is no shared intention between the transferor and the transferee that further transfers occur" (emphasis in original)), and had reached a common agreement to distribute drugs, see United States v. Hawkins, 547 F.3d at 75 (finding agreement to distribute drugs where supplier offered defendant source of cocaine and defendant provided supplier with "another outlet—albeit small—for his contraband").

   b.     Distribution Quantity

VanHoesen argues that even if the evidence at trial was sufficient to prove conspiracy, a rational jury could not find that he agreed to distribute 50 grams or more of crack. "A member of a conspiracy is . . . liable for an act he agreed to and intended to commit in furtherance of the conspiracy regardless of whether he ultimately committed the substantive act." United States v. Jackson, 335 F.3d 170, 181 (2d Cir. 2003). Further, an agreement need not be explicit, but may be implied from the totality of the evidence. See United States v. Amato, 15 F.3d 230, 235 (2d Cir. 1994). From the evidence already referenced of the men's intent to establish an ongoing distribution scheme and the fact that VanHoesen distributed over 15 grams of crack in two days, an operation halted only by his arrest on a different charge, a rational jury could find beyond a reasonable doubt that VanHoesen and Conley had tacitly agreed to distribute 50 grams or more of crack. See United States v. Dallas, 229 F.3d 105, 110-11 (2d Cir. 2000) (holding that failure to consummate scheme

10

does not preclude conspiracy conviction). Indeed, at the rate VanHoesen was selling crack it would have taken the conspirators only a week to distribute such a quantity. Because we conclude that the evidence of VanHoesen's own conduct was sufficient to permit a reasonable jury to find conspiratorial intent to distribute 50 grams or more of crack, we need not consider whether the evidence was sufficient to hold him accountable for drug quantities distributed by others in Conley's broad distribution conspiracy.

4.      Cross-Examination

a.      Tarver

VanHoesen argues that the district court abused its discretion in prohibiting him from cross-examining Tarver regarding her prior conviction for witness intimidation in violation of New York Penal Law § 215.15. See United States v. Estrada, 430 F.3d 606, 615 (2d Cir. 2005). The Federal Rules of Evidence provide that a party may impeach a witness's character for truthfulness with "evidence that [the] witness has been convicted of a crime, . . . if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness." See Fed. R. Evid. 609(a)(2) (emphasis added). While witness intimidation in violation of New York Penal Law § 215.15 may aim at presenting dishonest or incomplete (and, therefore, misleading) evidence in court, none of the elements of that crime require proof of an act of dishonesty or false statement. Cf. United States v. Jefferson, 623 F.3d 227, 234 (5th Cir. 2010) (noting that conviction under obstruction of justice statute, 18 U.S.C. § 1512(b)(3), based on intimidating or threatening another person, does not necessarily "involve acts of dishonesty or false

11

statement"). Although we will in some cases "look beyond the elements of the offense to determine whether the conviction rested upon facts establishing dishonesty or false statement," United States v. Payton, 159 F.3d 49, 57 (2d Cir. 1998), VanHoesen made no attempt to establish the underlying facts of Tarver's conviction. We therefore identify no abuse of discretion in precluding VanHoesen from eliciting evidence of Tarver's conviction for witness intimidation.

b. Conley

The district court also acted well within its discretion in precluding VanHoesen from questioning Conley regarding a September 11, 2006 telephone call in order to show that Conley was at home during the time he said he was selling crack to VanHoesen. Because Conley testified that he made the September 11, 2006 sale to VanHoesen at some time after 2:00 p.m., whereas the call at issue was recorded at approximately 3:00 p.m., the district court reasonably precluded VanHoesen from pursuing a matter of such minimal relevance. See United States v. Cedeño, 644 F.3d 79, 81-82 (2d Cir. 2011), cert. denied, No. 11-5531, 2011 WL 4536211 (U.S. Oct. 3, 2011); United States v. Quinones, 511 F.3d 289, 311 (2d Cir. 2007) ("A district court has broad discretion to determine the relevancy of evidence." (internal quotation marks omitted)).

5. Sentence

a. Mandatory Life Sentence

VanHoesen contends that his life sentence, mandated under the provisions of 21 U.S.C. § 841(b)(1)(A)(iii) then in effect, violates the Eighth Amendment because it is grossly

12

disproportionate to his offense of conviction.[2] The particularly harsh sentence was statutorily required because VanHoesen's conviction for conspiracy to distribute 50 grams or more of crack cocaine was his third felony drug offense. See id. § 841(b)(1)(A). The Eighth Amendment does not prohibit Congress from choosing to punish recidivist offenders more harshly than first-timer offenders, see Rummel v. Estelle, 445 U.S. 263, 276, 278 (1980) (upholding mandatory life sentence for third-felony offender), or from choosing to punish drug offenses with terms of life imprisonment, see Harmelin v. Michigan, 501 U.S. 957, 961, 994 (1991). In these circumstances, we cannot conclude that Congress's choice was so "grossly disproportionate" to the circumstances presented as to be unconstitutional. See Harmelin v. Michigan, 501 U.S. at 1001 (Kennedy, J., concurring in part and concurring in the judgment) (internal quotation marks omitted).

---

[2] The Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2, 124 Stat. 2372, 2372, amended 21 U.S.C. § 841(b)(1)(A)(iii) by increasing the quantity of crack cocaine required for a conviction under that subsection from 50 to 280 grams. VanHoesen suggested at oral argument that the Act applies retroactively to his case, although he conceded that he did not raise this argument in his briefs, and both his offense conduct and sentencing occurred before the Act's effective date. This argument, in any event, is unavailing in light of our precedent, see United States v. Acoff, 634 F.3d 200, 202 (2d Cir. 2011), cert. denied, 131 S. Ct. 3007 (2011), and that of our sister circuits, see United States v. Goncalves, 642 F.3d 245, 251-55 (1st Cir. 2011); United States v. Reevey, 631 F.3d 110, 114-15 (3d Cir. 2010); United States v. Bullard, 645 F.3d 237, 248 (4th Cir. 2011); United States v. Tickles, Nos. 10-30852, 10-31085, 2011 WL 4953988, at *1 (5th Cir. Oct. 19, 2011); United States v. Carradine, 621 F.3d 575, 580 (6th Cir. 2010); United States v. Fisher, 635 F.3d 336, 338 (7th Cir. 2011), cert. granted sub nom. Dorsey v. United States, No. 11-5683, 2011 WL 3422126, at *1 (U.S. Nov. 28, 2011); United States v. Sidney, 648 F.3d 904, 908 (8th Cir. 2011); United States v. Baptist, 646 F.3d 1225, 1229 (9th Cir. 2011); United States v. Lewis, 625 F.3d 1224, 1228 (10th Cir. 2010); United States v. Gomes, 621 F.3d 1343, 1346 (11th Cir. 2010).

b.    Procedural Error

VanHoesen argues that the concurrent thirty-year and life sentences imposed for his three substantive convictions are infected by procedural error, specifically the district court's failure to consider the sentencing factors prescribed by 18 U.S.C. § 3553(a). This argument is refuted by the record. Although the district court did not specifically reference the § 3553(a) factors, "we do not require robotic incantations that the district court has considered each of the § 3553(a) factors." United States v. Cavera, 550 F.3d 180, 193 (2d Cir. 2008) (en banc) (internal quotation marks omitted). Such consideration is adequately evidenced here by the district court's implicit adoption of the facts stated in the pre-sentence report, its explanation as to how it resolved VanHoesen's various objections to the report, and its specific concern that VanHoesen had "led the majority of [his] life violating state laws." App'x at 538-40. In sum, no procedural error renders the sentence unreasonable.

6.    Conclusion

We have considered VanHoesen's remaining arguments on appeal and conclude that they are without merit. Accordingly, the judgment of conviction is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

14