FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>YALE AUGUSTINE,<br>*Defendant-Appellant*. | No. 12-50061<br><br>D.C. No.<br>2:07-cr-00402-<br>AHM-1<br><br>OPINION |

Appeal from the United States District Court
for the Central District of California,
A. Howard Matz, District Judge, Presiding

Argued and Submitted
February 7, 2013—Pasadena, California

Filed April 3, 2013

Before: Consuelo M. Callahan, Sandra S. Ikuta, and
Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Hurwitz

## SUMMARY[*]

### Criminal Law

The panel affirmed the district court's order lowering the defendant's sentence by only one month, to the mandatory minimum under the law in effect at the time of the defendant's sentencing, on the defendant's motion pursuant to 18 U.S.C. § 3582(c)(2).

The panel held that the lower mandatory minimums in the Fair Sentencing Act of 2010, which addressed the inequitable disparity between the sentences prescribed for crack and powder cocaine offenses, do not apply in § 3582(c)(2) proceedings to defendants sentenced before the FSA was enacted.

The panel rejected the defendant's attempts to distinguish *United States v. Baptist*, 646 F.3d 1225 (9th Cir. 2011) (per curiam), and *United States v. Sykes*, 658 F.3d 1140 (9th Cir. 2011); and agreed with other circuits that *Dorsey v. United States*, 132 S. Ct. 2321 (2012), does not require retroactive application of the FSA's mandatory minimums to those sentenced before the Act's passage.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Carlton F. Gunn, Pasadena, California, for Defendant-Appellant.

André Birotte Jr., United States Attorney; Robert E. Dugdale, Assistant United States Attorney; Jean-Claude André (argued), Assistant United States Attorney, Los Angeles, California, for Plaintiff-Appellee.

**OPINION**

HURWITZ, Circuit Judge:

In the Fair Sentencing Act of 2010 ("FSA"), Pub. L. No. 111–220, 124 Stat. 2372, Congress addressed the inequitable disparity between the sentences prescribed for crack and powder cocaine offenses. The question in this case is whether a defendant sentenced for a crack cocaine offense before the FSA was enacted is eligible for a reduced sentence under 18 U.S.C. § 3582(c)(2). We hold, consistent with all circuits to have addressed the issue, that the FSA's lowered mandatory minimums are not available to such individuals.

**I.**

On October 10, 2007, after pleading guilty to distributing 83.2 grams of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii), Yale Augustine was sentenced to 121 months in custody. At the time, the offense carried a mandatory minimum sentence of 120 months, 21 U.S.C. § 841(b)(1)(A) (2006), and the district court

applied a Sentencing Guidelines range of 121 to 151 months, *see* U.S.S.G. § 2D1.1 (2006).

"Under the Controlled Substances Act, 21 U.S.C. §§ 801 et seq., and the related Sentencing Guidelines, § 2D1.1, a drug trafficker dealing in crack cocaine at the time of [Augustine's] conviction was subject to the same sentence as one dealing in 100 times as much powder cocaine." *United States v. Fields*, 699 F.3d 518, 520 (D.C. Cir. 2012), *cert. denied*, ___ S. Ct. ___, No. 12-8614, 2013 WL 506828, at *1 (Mar. 18, 2013) (citing *Kimbrough v. United States*, 552 U.S. 85, 91 (2007)). That disparity was created by the Anti-Drug Abuse Act of 1986, Pub. L. No. 99–570, 100 Stat. 3207, which was enacted under the assumption "that crack was significantly more dangerous than powder cocaine." *Kimbrough*, 552 U.S. at 95. Over the years, that assumption and the resulting disparity in mandatory minimum sentences were repeatedly questioned. *See id.* at 97–100. The Sentencing Commission urged Congress in the 1990s to adopt a 1-to-1 ratio. United States Sentencing Commission, Special Report to the Congress: Cocaine and Federal Sentencing Policy (Feb. 1995), *available at* http://www.ussc.gov /Legislative_and_Public_Affairs /Congressional_Testimony _and_Reports/Drug_Topics/199502_RtC_Cocaine _Sentencing_Policy/index.htm; United States Sentencing Commission, Special Report to the Congress: Cocaine and Federal Sentencing Policy (April 1997), *available at* http://www.ussc.gov /Legislative_and_Public_Affairs /Congressional_Testimony_and_Reports/Drug_Topics /19970429_RtC_Cocaine_Sentencing_Policy.PDF (all internet materials last visited Mar. 27, 2013). Later Sentencing Commission reports emphasized that the 100-to-1 disparity "'fosters disrespect for and lack of confidence in the criminal justice system' because of a 'widely-held

perception' that it 'promotes unwarranted disparity based on race.'" *Kimbrough*, 552 U.S. at 98 (quoting United States Sentencing Commission, Report to the Congress: Cocaine and Federal Sentencing Policy 103 (May 2002), *available at* http://www.ussc.gov/Legislative_and_Public_Affairs /Congressional_Testimony_and_Reports/Drug_Topics /200205_RtC_Cocaine_Sentencing_Policy/200205_Cocaine _and_Federal_Sentencing_Policy.pdf); *see also* United States Sentencing Commission, Report to the Congress: Cocaine and Federal Sentencing Policy (May 2007), *available at* http://www.ussc.gov/Legislative_and_Public_Affairs /Congressional_Testimony_and_Reports/Drug_Topics /200705_RtC_Cocaine_Sentencing_Policy.pdf.

The FSA, enacted on August 3, 2010, was in part Congress' response to criticism of the extant sentencing scheme; it reduced the crack/powder disparity from 100-to-1 to 18-to-1. *Fields*, 699 F.3d at 522. The FSA raised the quantity of crack cocaine necessary to trigger a five-year mandatory minimum sentence from 5 to 28 grams and raised the quantity necessary to trigger a ten-year mandatory minimum sentence from 50 to 280 grams. Pub. L. No. 111–220 § 2(a), 124 Stat. 2372 (amending 21 U.S.C. § 841(b)(1)).

The FSA gave the Sentencing Commission emergency authority to amend the Sentencing Guidelines to bring them in line with the new statutory penalties. *Id.* § 8, 124 Stat. 2374. Pursuant to that authority, the Commission promulgated Amendment 748, which lowered the offense levels for crack cocaine offenses in the drug quantity table of Guidelines § 2D1.1(c). U.S.S.G. App. C, amend. 748 (Nov. 2010). Amendment 748 became effective November 1, 2010, but did not apply retroactively. *Id.*

Amendment 750 made the emergency changes to § 2D1.1(c) permanent as of November 1, 2011. U.S.S.G. App. C, amend. 750 (Nov. 2011). Amendment 759 also made those changes retroactive. U.S.S.G. App. C., amend. 759 (Nov. 2011); U.S.S.G. § 1B1.10(c) (listing Part A of Amendment 750 as retroactive).

On December 22, 2011, Augustine filed a motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2). Section 3582(c)(2), a generally applicable statute pre-dating the FSA, allows a reduction of sentence "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." Augustine noted that the FSA had lowered the mandatory minimum for distributing 83.2 grams of crack cocaine to 60 months, and that the applicable Guidelines range had been lowered to 70 to 87 months. *See* 21 U.S.C. § 841(b)(1)(B)(iii); U.S.S.G. § 2D1.1. Augustine requested that the district court reduce his sentence to 70 months.

The district court instead lowered Augustine's sentence by only one month, to 120 months, the mandatory minimum under the law in effect at the time of Augustine's sentencing. The court expressed regret that it could not lower the sentence further, but determined that the FSA did not apply retroactively. This appeal addresses that legal conclusion, which we review de novo. *United States v. Paulk*, 569 F.3d 1094, 1094–95 (9th Cir. 2009) (per curiam).

## II.

### A.

We have twice before confronted the application of the FSA's reduced mandatory minimums to defendants sentenced before the statute was enacted. *See United States v. Baptist*, 646 F.3d 1225 (9th Cir. 2011) (per curiam), *cert. denied*, 132 S. Ct. 1053 (2012); *United States v. Sykes*, 658 F.3d 1140 (9th Cir. 2011). In *Baptist*, we held that the new mandatory minimums did not apply to a defendant whose appeal was pending when the FSA became effective, because both the relevant conduct and sentencing occurred before that date. 646 F.3d at 1227. In reaching that conclusion, we relied on the General Savings Statute, 1 U.S.C. § 109, which provides:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

We noted that "[t]he Supreme Court has held that the General Savings Statute operates to prevent the retroactive application of an ameliorative statute like the Fair Sentencing Act, absent an expression of congressional intention to apply it to pre-enactment conduct." *Baptist*, 646 F.3d at 1227 (citing *Warden, Lewisburg Penitentiary v. Marrero*, 417 U.S. 653, 661 (1974)). We found no such intent expressed in the FSA,

agreeing with every other circuit to have considered the question. *Id.* at 1229 (collecting cases).

Augustine attempts to distinguish *Baptist* because it involved a direct appeal rather than review of denial of a § 3582(c)(2) motion. This argument, however, founders on *Sykes*.

Like Augustine, Sykes pleaded guilty to distribution of at least 50 grams of crack cocaine and was sentenced to 121 months in custody before the FSA became effective. *Sykes*, 658 F.3d at 1142–43. The Guidelines range at the time of Sykes' sentencing was the same one Augustine faced – 121 to 151 months – and the applicable mandatory minimum 120 months. *Id.* at 1143. After the Sentencing Commission lowered the applicable Guidelines range to 97 to 121 months in 2007 through Amendment 706, Sykes filed a § 3582(c)(2) motion. *Id.* at 1143–44. The district court, acting two days after the FSA was enacted, reduced Sykes' sentence to 120 months, but refused to lower the sentence further, holding that the pre-FSA 120-month mandatory minimum still applied. *Id.* at 1144. We affirmed, holding that "[t]he FSA does not apply to defendants sentenced prior to its effective date of August 3, 2010." *Id.* at 1148 (citing *Baptist*, 646 F.3d at 1229).

In attempting to distinguish *Sykes*, Augustine notes that the post-FSA Guidelines amendments, Amendments 748, 750, and 759, had not yet been promulgated when Sykes' § 3582(c)(2) motion was denied. He argues that applying a pre-FSA mandatory minimum and a post-FSA Guidelines range is "odd," because even the high end of the post-FSA Guidelines range will often be well below the pre-FSA mandatory minimum, as is the case here.

Augustine's observation has some force. But, as we explained in *Baptist*, Congress seems to have intended any such oddity. *Baptist*, 646 F.3d at 1227–30. The Sentencing Guidelines also contemplate such a regime, providing that "a reduction in the defendant's term of imprisonment is not authorized under 18 U.S.C. § 3582(c)(2) and is not consistent with this policy statement if . . . the amendment does not have the effect of lowering the defendant's applicable guideline range because of the operation of another guideline or statutory provision (e.g., a statutory mandatory minimum term of imprisonment)." U.S.S.G. § 1B1.10 cmt. n.1(A).

In the end, Augustine's argument that the FSA's mandatory minimums apply retroactively in § 3582(c)(2) proceedings ignores the core holding of *Baptist* and *Sykes*: Congress did not, as the General Savings Statute requires, express in the FSA any intention that the new mandatory minimums apply to those sentenced before the effective date of the act. *See Baptist*, 646 F.3d at 1227–30; *Sykes*, 658 F.3d at 1148; *see also Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001) ("Once a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled by the court itself sitting en banc, or by the Supreme Court."). Our prior decisions therefore doom Augustine's argument on this point.

**B.**

Augustine also argues that *Dorsey v. United States*, 132 S. Ct. 2321 (2012), decided after *Baptist* and *Sykes*, effectively overrules those decisions. On its face, however, *Dorsey* does not aid Augustine, as the Supreme Court there found the FSA's lower mandatory minimums applicable to defendants sentenced *after* the Act's enactment, even if the

relevant conduct and conviction occurred beforehand. *Id.* at 2326; *see also United States v. Robinson*, 697 F.3d 443, 445 (7th Cir. 2012) (per curiam) ("*Dorsey* carefully confined its application of the Fair Sentencing Act to pre-Act offenders who were sentenced *after* the Act.").

Augustine's real argument is that it would be arbitrary to make application of the FSA turn on the date of sentencing, often a matter of happenstance unrelated to the defendant's culpability.    The Supreme Court, however, expressly recognized "that application of the new minimums to pre-Act offenders sentenced after August 3 will create a new set of disparities," but nonetheless concluded "that this particular new disparity (between those pre-Act offenders already sentenced and those not yet sentenced as of August 3) cannot make a critical difference."   132 S. Ct. at 2335.   This statement is dictum, but considered Supreme Court dictum is special.  "We do not treat considered dicta from the Supreme Court lightly.  Rather, we accord it appropriate deference." *United States v. Montero-Camargo*, 208 F.3d 1122, 1132 n.17 (9th Cir. 2000); *see also Fields*, 699 F.3d at 522 (treating *Dorsey*'s "carefully considered" dictum as "authoritative").

In light of the *Dorsey* dictum, other circuits to consider the issue have unsurprisingly – and unanimously – rejected the argument that *Dorsey* requires retroactive application of the FSA's mandatory minimums to those sentenced before the Act's passage. *United States v. Turlington*, 696 F.3d 425, 428 (3d Cir. 2012); *United States v. Mouzone*, 687 F.3d 207, 222 (4th Cir. 2012), *cert. denied sub nom. Fleming v. United States*, 133 S. Ct. 899 (2013); *United States v. Stanley*, No. 11-4423, 2012 WL 4014932, at *2–3 (6th Cir. Sept. 13, 2012) (unpublished), *cert. denied*, 133 S. Ct. 1302 (2013); *Robinson*, 697 F.3d at 444–45; *United States v. Wormley*,

471 Fed. Appx. 837, 839 (10th Cir. 2012) (unpublished); *Fields*, 699 F.3d at 522. We agree with our sister circuits.

We recognize, as did the Supreme Court, that this regime creates a disparity between those sentenced before and after adoption of the FSA. But, as *Dorsey* noted, some disparities "will exist whenever Congress enacts a new law changing sentences." 132 S. Ct. at 2335. Any unfairness of the disparity resulting from the inapplicability of the FSA to Augustine, however, is beyond the province of this court to resolve. In light of the General Savings Statute, Congress, through its silence in the FSA on the question of retroactivity, has resolved the issue.

## C.

Like Augustine, many sentenced for crack cocaine offenses before enactment of the FSA are eligible for some reduction of sentence in light of the Guidelines Amendments. *See* U.S.S.G. App. C., amends. 748, 750, 759. These defendants may receive reductions of sentences to the statutory minimums in effect at the time of sentencing if the applicable Guidelines range so allows. The district court, however, may not impose a sentence below applicable pre-FSA mandatory minimums.

Here, for example, the post-FSA Guidelines amendments lowered the range applicable to Augustine to 70 to 87 months. The district court reduced Augustine's sentence to 120 months, the applicable mandatory minimum. The Government does not oppose that reduction, and we encourage district courts to consider similar reductions when confronted with § 3582(c)(2) motions from similarly situated defendants. Although relatively minor, such reductions are

consistent with the FSA's goal to mitigate the unfair disparity between crack and powder cocaine offense sentences.

## III.

For the reasons above, we hold that the FSA mandatory minimums do not apply in § 3582(c)(2) proceedings to defendants sentenced before the FSA was enacted. The district court's order is therefore affirmed.

**AFFIRMED.**