UNITED STATES of America, Appellee
and Cross–Appellant,

v.

Longino Xavier EDELIN, Appellant
and Cross–Appellee.

Nos. 92–3111 and 92–3140.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 14, 1993.

Decided June 25, 1993.

Rehearing and Suggestion for Rehearing
En Banc Denied Sept. 9, 1993.

A.J. Kramer, Federal Public Defender, argued the cause for Longino X. Edelin.

Peter V. Taylor, Asst. U.S. Atty., argued the cause for the U.S. of America. On brief were Jay B. Stephens, U.S. Atty. at the time the brief was filed, and John R. Fisher and Kirby D. Behre, Asst. U.S. Attys.

Before WALD, HENDERSON and RANDOLPH, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM:

Longino Xavier Edelin was convicted of possession with intent to distribute cocaine base within 1,000 feet of a school. He appeals his conviction and the government cross-appeals Edelin's sentence, challenging the district court's decision to depart downward from the United States Sentencing Guidelines. We affirm the conviction but remand to the district court for resentencing.

## I.

On October 22, 1991, officers of the Metropolitan Police Department (MPD), acting pursuant to a warrant, searched a house at 270 53rd Street, N.E. As they climbed the stairs to the second floor, the officers saw Longino Edelin, clothed only in underwear, leaving a bedroom. In a dresser drawer in the bedroom, the police found men's underwear and a paper bag containing 31.97 grams of cocaine base, ziploc bags and a razor blade. The drawer also contained some men's t-shirts, two pieces of mail addressed to Edelin and a photograph of Edelin. On top of the dresser, the officers discovered an invoice addressed to Micah Bidgell, Edelin's nephew. In searching the rest of the room, the police found several more pieces of Edelin's mail on the dresser and on top of a television.

Edelin was charged with possession with intent to distribute five grams or more of cocaine base in violation of 21 U.S.C. § 841 and with possession with intent to distribute within 1,000 feet of a school in violation of 21 U.S.C. § 860(a). At trial, the parties stipulated both that the quantity and packaging of the drugs were consistent with an intent to distribute and that the house was within 1,000 feet of a school. Edelin's mother (who was also Bidgell's grandmother) testified that Bidgell left the house about five minutes before the raid. Edelin's sister, brother and mother all testified that there were two beds in the room the police searched and that Bidgell shared the room with Edelin. Two police officers, however, testified that on the night of the search they found only one bed in the room and that the room was too small to contain a second bed.

Edelin also attempted to introduce evidence of statements Bidgell made to an investigator working for the defense. Five days before the trial, Bidgell told the investigator that he stayed in the bedroom and shared the dresser but he did not know where the drugs came from. On the day of trial, during a meeting with the investigator, Bidgell signed a statement acknowledging that he shared the bedroom with Edelin and claiming that "I know for a fact, without a doubt, that the drugs found in the bedroom at the above address were not Longino Edelin's drugs." Excerpted Record (E.R.) at 5. He then told the investigator that he expected to be indicted as a result of his statement. The district court allowed the investigator to testify that Bidgell admitted sharing the bedroom and the dresser. The district court declined to admit the rest of Bidgell's statements, concluding that they did not qualify for admission under rule 804(b)(3) of the Federal Rules of Evidence.

Edelin was convicted of possession with intent to distribute cocaine base within 1,000 feet of a school.[1] The presentencing report assigned Edelin a criminal history category of IV and an offense level of 30. Although the designated sentencing range for that criminal history category and that offense level is 135 to 168 months, the district court *sua sponte* reduced Edelin's sentence to 120 months. Edelin appeals, claiming (1) there was insufficient evidence to support his conviction, (2) the failure to admit Bidgell's statements in their entirety was prejudicial error, (3) the district court erred in charging the jury on reasonable doubt, (4) the prosecutor misrepresented Bidgell's statements in closing argument and (5) the district court misinterpreted the essential elements of the offense of possession with intent to distribute within 1,000 feet of a school. The government cross-appeals the district court's downward departure.

---

1. Edelin was also convicted of the lesser included offense of possession with intent to distribute; the district court merged the two offenses.

## II.

### A. Sufficiency of the Evidence

The standard for reversing a conviction for insufficient evidence is high. We must view the prosecution's evidence "in the light most favorable to the government, drawing no distinction between direct and circumstantial evidence, and giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact." *United States v. Williams*, 952 F.2d 418, 419 (D.C.Cir.1991) (quoting *United States v. Foster*, 783 F.2d 1087, 1088 (D.C.Cir.1986) (en banc)). The court defers to the jury's determination if " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Long*, 905 F.2d 1572, 1577 (D.C.Cir.1990) (quoting *Jackson v. Virginia*, 443 U.S. 307, 309, 99 S.Ct. 2781, 2784, 61 L.Ed.2d 560 (1979)).

■ The only relevant issue is whether the evidence was sufficient to establish that Edelin constructively possessed the drugs. A conviction based on constructive possession requires evidence that the defendant "had the ability to exercise knowing dominion and control" over the drugs. *United States v. Morris*, 977 F.2d 617, 619 (D.C.Cir.1992). Evidence of proximity to the drugs does not by itself support a possession conviction. *United States v. Evans*, 888 F.2d 891, 895 (D.C.Cir.1989). "There must be 'some action, some word, or some conduct that links the individual to the [illegal items] and indicates that he had some stake in them, some power over them.' " *United States v. Ford*, 993 F.2d 249, 252 No. 92–3227, slip op. at 6 (D.C.Cir. May 25, 1993) (quoting *United States v. Foster*, 783 F.2d 1087, 1089 (D.C.Cir.1986)). Along these lines, we have indicated that a jury may infer "that those who live in a house know what is going on inside," *United States v. Jenkins*, 928 F.2d 1175, 1179 (D.C.Cir.1991), and thus may conclude that "a person exercises constructive possession over items found in his home." *Morris*, 977 F.2d at 620. The inference applies "even when that person shares the premises with others." *Id.*

■ Edelin maintains that the evidence established no more than his proximity to the drugs. The record, however, does not support him. First, even Edelin's witnesses testified that he lived in the room and used the dresser in which the drugs were found. Thus, there is no dispute that Edelin exercised dominion and control over at least part of the dresser. Second, a police officer testified that there was only one bed in the room, giving rise to the inference that Edelin was the only occupant. The jury was entitled to believe the officer's testimony in spite of the defense witnesses' testimony that the room contained two beds. Third, the police found two letters addressed to Edelin in the same dresser drawer with the drugs. Finally, the police encountered Edelin emerging from the bedroom in his underwear. Although not overwhelming, this evidence clearly supports an inference that Edelin had dominion and control over the dresser drawer and its contents and, accordingly, suffices to sustain Edelin's conviction.

### B. Bidgell's Statements Against Interest

An out-of-court statement against interest is admissible hearsay to the extent that it

> so far tended to subject the declarant to civil or criminal liability, ... that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Fed.R.Evid. 804(b)(3). Five days before trial, Bidgell told the defense attorney that he shared the bedroom and the dresser with Edelin but that he did not know where the drugs came from. The day of trial, Bidgell declared in writing that the drugs were not Edelin's. After signing the statement, he told the investigator that he expected to be indicted. The district court admitted Bidgell's statement that he shared the room and the dresser but excluded the other two statements. We review the district court's ruling under an abuse of discretion standard. *See*

*United States v. Magana–Olvera,* 917 F.2d 401, 407 (9th Cir.1990).

 Even were we to assume that Bidgell's excluded statements were inculpatory, they would not necessarily be admissible. When offered to exculpate the accused, as Bidgell's statements were, a statement against interest is not admissible unless "corroborating circumstances clearly indicate [its] trustworthiness." Fed.R.Evid. 804(b)(3); *see also United States v. Johnson,* 802 F.2d 1459, 1465 (D.C.Cir.1986) (statements against interest inadmissible because "circumstances enhance the possibility that [the] statements were wholly or partially fabricated"). Here, the district court found no independent indicia of trustworthiness for Bidgell's statements that he knew the drugs were not Edelin's and that he expected to be indicted. Several factors suggest that the district court did not err in excluding the two statements. First, Bidgell gave the statements to a defense investigator who he knew was working for Edelin. Bidgell, who is related to Edelin, may have had reason to help the defendant by fabricating a story. Second, the investigator obtained the statement the day of trial. Third, none of the other defense witnesses corroborated Bidgell's statement that the drugs did not belong to Edelin. Accordingly, the district court did not abuse its discretion in excluding the statements.

### C. Jury Charge on Reasonable Doubt

The trial judge instructed the jury regarding reasonable doubt as follows:

It is a doubt that a reasonable person has after carefully weighing all the evidence. It is a doubt which would cause a reasonable person to hesitate to act in a matter of importance in his or her personal life. Proof beyond a reasonable doubt must, ·therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his or her own personal affairs.

A reasonable doubt is not a caprice or whim. It is not a *speculation or suspicion.* It is not an excuse to avoid the

performance of an unpleasant duty, and it is not sympathy.

E.R. at 67 (emphasis added). Edelin objected to any reasonable doubt instruction. He also maintained that the statement that reasonable doubt is not "a speculation or suspicion" impermissibly lowered the government's burden of proof.

 At least two circuits have taken the position that attempts to define reasonable doubt are rarely helpful to the jury; consequently, they have proscribed any instruction that defines the term. *See United States v. Woods,* 812 F.2d 1483, 1487 (4th Cir.1987); *United States v. Hall,* 854 F.2d 1036, 1039 (7th Cir.1988). This circuit, however, has accorded the district court some discretion in giving reasonable doubt instructions. In *United States v. Dale,* 991 F.2d 819, 852 (D.C.Cir.1993), this court approved an instruction based on the manual entitled *Criminal Jury Instructions District of Columbia* (known as the Red Book).

 Nonetheless, Edelin maintains the district court's statement that a reasonable doubt is "not a speculation or suspicion" impermissibly lowers the government's burden of proof. He argues that the dictionary definition of "speculation" is "a view, conclusion, opinion, or decision based on thought or attained by reasoning." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2189 (1981). The dictionary defines "suspicion" as "imagination or apprehension of something wrong or hurtful without proof or on slight evidence." *Id.* at 2304. Speculation and suspicion, according to the defendant, therefore constitute reasonable doubt.

In evaluating jury instructions, a court must "consider how reasonable jurors could have understood the charge as a whole." *Cage v. Louisiana,* 498 U.S. 39, 40, 111 S.Ct. 328, 329, 112 L.Ed.2d 339 (1990). Thus, we ask whether "there is a reasonable likelihood that the jury has applied the instruction in a way that violates the constitution." *Estelle v. McGuire,* —— U.S. ——, ——, 112 S.Ct. 475, 482, 116 L.Ed.2d 385 (1991). Accordingly, we have recognized that "appellate courts' picking over every possible nuance of an instruction ... is likely to drive district courts into a ritualistic recital of canned lan-

guage that numbs the jury." *United States v. Merlos,* 984 F.2d 1239, 1241 (D.C.Cir. 1993).

When read in context, there is little danger that the challenged language misled the jury. Immediately before making the statement to which Edelin objects, the district court told the jury that reasonable doubt is "not caprice or whim." Afterwards, he informed the jury that "sympathy" likewise does not constitute reasonable doubt. In view of the totality of the reasonable doubt charge, it is clear to us that the district court's "suspicion and speculation" language did not impermissibly narrow the category of reasonable doubt.

In *Cage,* 498 U.S. at 40, 111 S.Ct. at 329, the Supreme Court rejected a description of reasonable doubt as "such doubt as would give rise to a *grave uncertainty*" and "an actual *substantial doubt.*" Defining reasonable doubt to exclude "suspicion" and "speculation" does not make the definition nearly as stringent as the one rejected in *Cage.* In sum, the reasonable doubt instruction was not erroneous.[2]

### D. Closing Argument

During closing argument, the defense stated that Bidgell:

> didn't come right out and say they're my drugs. I mean, he's not going to say that. But he came as close to it as you can by saying I live in that room. That's my dresser.... He admits—he essentially admits the drugs are his.

Tr. III. at 78. In rebuttal, the prosecution argued that Bidgell "had a motive to tell something other than the truth, particularly when it's no sweat off his back." E.R. at 62. The prosecution then went on to tell the jury:

> All he did was say he lived there. He didn't say the drugs were his. You didn't hear that come out of the mouth of the investigator.

*Id.*

Immediately after the prosecutor made the statements, the district court instructed the jury to "strike everything [the prosecution] said concerning" Bidgell's possession of the drugs. E.R. at 65. The court informed the jury:

> The only evidence that you have concerning Mr. Bidgell, concerning that room and what he said, was from that investigator. And his testimony was he says they shared the room and shared the dresser. And you can make whatever—you can infer whatever you want from that.
>
> But what you cannot infer is anything about Mr. Bidgell saying that—or denying that these were his drugs.

*Id.* Edelin claims the prosecutor's argument misrepresented the evidence and misled the jury. He also argues that the district court's instructions were insufficient to cure the error.

The prosecutor must "avoid making statements of fact to the jury not supported by proper evidence introduced during trial." *Gaither v. United States,* 413 F.2d 1061, 1079 (D.C.Cir.1969). Nonetheless, we have generally been "chary of reversing convictions solely on the grounds of a misstatement in a closing argument." *United States v. North,* 910 F.2d 843, 897 (D.C.Cir.1990). In making such a determination, the court has required a finding both that the prosecutor's actions were improper and that they substantially prejudiced the jury. *Id.* at 898. The severity of the misconduct, the measures taken to cure it and the certainty of conviction absent the improper remarks are factors to be considered in weighing prejudice to the defendant. *United States v. Monaghan,* 741 F.2d 1434, 1443 (D.C.Cir.1984).

The prosecutor's statement that Bidgell "didn't say the drugs were his" is an accurate characterization of the record evidence since *only* Bidgell's statements that he shared the room and the dresser were admitted. Moreover, even Bidgell's *inadmissible* statements did not constitute an express admission that the drugs were his. Bidgell

---

**2.** We emphasize that we conclude not that the district court's error, if any, was harmless but that it committed no error in charging the jury on reasonable doubt. *Cf. Sullivan v. Louisiana,* —— U.S. ——, ——, 113 S.Ct. 2078, 2079, 124 L.Ed.2d 182 (1993) (harmless error analysis cannot be applied to constitutionally deficient reasonable doubt instruction).

only said that *Edelin* did not own the drugs.[3] It is hardly certain that the prosecutor overstepped the bounds of permissible argument by stating that Bidgell had no reason to tell the truth because his statements to the investigator were "no sweat off his back." Whether Bidgell's statements to the defense investigator would have affected the likelihood of charges being brought against him only invites speculation.

Even assuming, however, that the prosecutor's statements were improper, the statements did not substantially prejudice the jury.[4] First, the prosecutor's misconduct was not extreme. The prosecutor was responding to a similar distortion of the record by the defense. In its closing, the defense argued that "Bidgell essentially admits the drugs are his." Bidgell's statements on the record—that he shared the room and the dresser—cannot be characterized accurately as an admission that he possessed the drugs. Bidgell's inadmissible comments, while perhaps lending support to that inference, fall short of constituting an admission as well. Moreover, the comments *were not before the jury* so the defense should not have referred to them. In fact, the jury was unaware of the protracted debate over Bidgell's inadmissible statements. Thus, not knowing that Bidgell had made additional statements, the jury could have reasonably interpreted the prosecutor's words as an assertion that *it had heard no evidence* that Bidgell said he possessed the drugs.

The steps taken to cure the error also weigh against reversing the conviction. The district court immediately issued curative instructions. This court's "unwillingness to reverse a conviction has been particularly pronounced when the trial judge issues curative instructions." *North,* 910 F.2d at 897. The court's instruction accurately characterized the evidence the jury heard in the case. It also indicated to the jury that it had *no evidence* regarding Bidgell's statements of ownership but that it could *infer* what it wanted from his admission that he shared the room and the dresser. Thus, the instruction focused the jury on the evidence before it and on its duty to consider only that evidence. For the preceding reasons, the prosecutor's closing argument does not require us to reverse Edelin's conviction.[5]

### E. Edelin's Sentence

The district court assigned Edelin a criminal history category of IV and a base offense level of 30. The Guidelines establish a sentence range of 135 to 168 months but the district court sentenced Edelin to 120 months. The government seeks resentencing and claims that the court erred by failing

---

3. Even this evidence, had it been admitted, supports contradictory inferences. Bidgell's statements can support the theory either that Bidgell (or someone else) owned the drugs but that Edelin jointly possessed them to aid in distribution or that Bidgell (or someone else) alone owned and possessed the drugs.

4. We recognize that *Monaghan* directs us to consider the certainty of the conviction absent the improper remarks. *Monaghan,* 741 F.2d at 1443. The evidence against Edelin at trial was not overwhelming; thus, we cannot say that Edelin's conviction was certain. Although this factor taken alone might suggest the need for a new trial, we find that it is outweighed by the other considerations discussed above. Considering the context of the prosecutor's remarks and the curative instructions provided by the district court, we do not feel that the remarks had any material impact on the jury. We therefore refuse to overturn the conviction.

5. Edelin also claims that his conviction of a "schoolyard" offense under 21 U.S.C. § 860(a)

cannot be upheld because the district court misinterpreted the elements of the crime. Section 860(a) provides:

> Any person who violates section 841(a)(1) or section 856 of this title by distributing, possessing with intent to distribute, or manufacturing a controlled substance in or on, or within one thousand feet of, the real property comprising a public or private elementary, vocational or secondary school . . . is . . . subject to (1) twice the maximum punishment authorized by section 841(b) of this title.

21 U.S.C. § 860(a). Edelin maintains that the government must prove under section 860(a) that he intended to *distribute* the drugs within 1,000 feet of a school. In *United States v. McDonald,* 991 F.2d 866, 868–69 (D.C.Cir.1993), we held that the phrase "within one thousand feet" in section 860(a) modifies "possessing" rather than "intent to distribute." Accordingly, we concluded that the government needs to prove only possession within 1,000 feet of a school and intent to distribute anywhere to secure a conviction under 860(a). Because the *McDonald* holding is dispositive, we reject Edelin's argument.

to provide notice and a proper reason for its downward departure. While Edelin concedes that the departure was both procedurally and substantively defective, he maintains that the government waived its objection to the departure. At sentencing, the prosecutor stated "for the record, we would oppose the departure." Tr. IV. at 28. The prosecutor then said nothing in response to the district court's query of "Anything further?" Tr. IV. at 29.

■ We have previously held that "arguments not made at sentencing" are waived and we make exceptions to that rule only for plain error. *United States v. Foster*, 988 F.2d 206, 209 (D.C.Cir.1993). Requiring parties to raise specific issues before the district court encourages parties to point out errors and thus provides the court with an opportunity to correct any mistake before an appeal is taken. We need not decide, however, whether the government preserved the objections it makes on appeal because the district court's error is plain.

■ First, the district court failed to provide the government and Edelin with notice of its intention to depart from the Guidelines. Both parties are entitled to notice before the district court decides *sua sponte* to depart from the sentencing range. *Burns v. United States*, —— U.S. ——, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991). The Supreme Court has suggested that the notice requirement applies whether the district court "departs upward or downward." *Id.* at —— n. 4, 111 S.Ct. at 2185 n. 4. Notice must "ensure that the parties have an adequate opportunity to present relevant information." Guidelines § 6A1.3, official commentary.

■ Of even more significance is the fact that the district court's basis for departure is improper. It offered the following reasons for its action: (1) Edelin graduated from high school and was attending some college classes, (2) the court imposed sixteen years of supervised release, (3) the possession with intent to distribute charge was incorporated in the "schoolyard" charge, thus the "two counts fed off one another" and (4) the possession with intent to distribute charge was dismissed. The last three factors are irrelevant to the departure decision because the sentence was based solely on the schoolyard conviction and the statute *mandates* a long period of supervised release. *See* 21 U.S.C. § 860(a). Moreover, educational background ordinarily is not a ground for departure and the trial court did not identify anything extraordinary about Edelin's educational background. *See* Sentencing Guidelines, § 5H1.2 (educational and vocational skills not ordinarily relevant in determining whether sentence should be outside guideline range); *but see Id.* at § 5K2.0 (court may depart from guideline range for reason already incorporated in sentencing range if "in light of unusual circumstances, the guideline level attached to that factor is inadequate"). Accordingly, we remand the case for resentencing in accordance with the Guidelines.

\* \* \*

We conclude that the evidence presented at trial was sufficient to support Edelin's conviction. We also find that the district court did not err in excluding certain of Bidgell's out of court statements or in charging the jury on reasonable doubt. Finally, we conclude that the prosecutor's closing remarks did not substantially prejudice the jury and thus do not warrant reversal of the conviction. Accordingly, we affirm the conviction. Because the district court failed to give the parties notice of its intent to depart downward and failed to provide valid reasons for the departure, however, we remand the case for resentencing.

*It is so ordered.*