**UNITED STATES OF AMERICA,**
Appellee,

v.

**Antonio D. DAVIS, Appellant.**

No. 00–3059.

United States Court of Appeals,
District of Columbia Circuit.

April 25, 2001.

Before HARRY T. EDWARDS, Chief Judge, STEPHEN F. WILLIAMS and KAREN LECRAFT HENDERSON, Circuit Judges.

### *JUDGMENT*

This case was considered on the record from the United States District Court for the District of Columbia and on the briefs and arguments by counsel. The court has accorded the arguments full consideration and has determined the issues presented occasion no need for a published opinion. *See* D.C.Cir. Rule 36(b). Accordingly, for the reasons set out in the accompanying memorandum, it is

ORDERED that the judgment of conviction be affirmed.

The clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. *See* D.C.Cir. Rule 41(a)(1).

### MEMORANDUM

Antonio D. Davis appeals his conviction of one count of felon possession of a firearm in violation of 18 U.S.C. § 922(g) on the ground that the district court erred in excluding hearsay testimony of an exculpatory "confession" under Federal Rule of Evidence 804(b)(3). For the reasons set forth below, we affirm the district court.

On August 25, 1999 Washington Metropolitan police officers responded to a radio dispatch regarding a man armed with a handgun in an apartment building hallway. As Officers Fred Rosairo and Kelvin Dyson approached the building together, they observed a man holding a gun in the window of the second floor stairway landing. Dyson testified that the man descended the stairway, "bent over and looked out the window and saw us approaching, turned around and ran back up the stairs." 1/5/00 Tr. 32. Other officers joined Rosairo and Dyson and they all went inside the building. Two of the newly arrived officers found Davis and his brother Ronnie Melson on the stairs between the second and third floors and found a handgun lying on the floor next to the third floor landing. Dyson and Rosairo identified Davis as the man they had seen holding the gun and Davis was arrested. Melson was released.

Between Davis's arrest and his trial in January 2000 Melson stated in front of Davis's lawyer and a defense investigator that it was he, not Davis, who possessed the firearm on August 25, 1999. Melson was apparently prepared to testify to this fact at trial but changed his mind at the eleventh hour and invoked his Fifth Amendment right against self-incrimination. Davis's lawyer then sought to introduce the confession through the hearsay testimony of the investigator as a statement against penal interest by an unavailable witness under Rule 804(b)(3). The district court excluded the testimony, con-

cluding it did not satisfy the rule's requirement that "corroborating circumstances clearly indicate the trustworthiness of the statement." Davis challenges the ruling on two grounds.

We first consider Davis's contention that the district court abused its discretion when it declined to find corroborative the testimony of defense witness Lattersea Goodwin who lived in an apartment on the building's third floor. There was no abuse of discretion. Goodwin testified that on August 25, 1999 she looked through the peephole in her apartment door and saw Davis knocking on the door of the apartment next door to hers. Then, she testified, she saw a second man climb the stairs "as if he was crouched down on the steps" and approach the third floor window. 1/5/00 Tr. 167. Finally, she saw police officers appear on the stairway and apprehend the two men. Davis contends Goodwin's description of the second man's crouched approach to the window indicates that the man Dyson saw bending down to look out the window at him was in fact Melson not Davis. Therefore, Davis argues, her testimony corroborates Melson's statement that he, not Davis, was in possession of the gun. We disagree. We do not believe that a man who bends over to look out a second floor window is necessarily the same man who later, in a crouched position, approaches a third floor window. At least it is not likely enough to *clearly* indicate the trustworthiness" of Melson's statement.[1] Nor do we find Melson's mere presence in the building, to which Dyson and Rosairo testified, particularly corroborative of his claim that he had the gun. In fact, the two officers' testimony directly contradicts this claim.

We next address–and reject–Davis's assertion that the district court abused its discretion by ignoring the circumstances surrounding Melson's confession. While it is true the district court focused on the facts surrounding the offense and arrest, the court also addressed the credibility of Melson's confession, concluding that Melson's "change of mind" about testifying "has also to raise some concerns as to the trustworthiness of his position and of any statements he might make." 1/16/00 Tr. 23. Further, Davis has not identified any circumstances surrounding Melson's confession and subsequent refusal to testify that satisfy the corroboration requirement.

The circumstances of Melson's statement are not materially distinguishable from those found not to be corroborative in *United States v. Edelin*, 996 F.2d 1238 (D.C.Cir.1993). In *Edelin* the court upheld the exclusion of statements that Micah Bidgell, who shared a bedroom with defendant Longino Edelin, made to a defense investigator indicating drugs found in a bedroom dresser drawer were not the defendant's but his own. The proffered statements against interest consisted of (1) a written statement Bidgell signed "acknowledging that he shared the bedroom with Edelin and claiming that 'I know for a fact, without a doubt, that the drugs found in the bedroom at the above address were not Longino Edelin's drugs'" and (2) his remark to the investigator that he "expected to be indicted as a result of his statement." 996 F.2d at 1240. The *Edelin* court identified "[s]everal factors suggest[ing] that the district court did not err in excluding the two statements":

First, Bidgell gave the statements to a defense investigator who he knew was

---

1. In addition, the district court found Miss Goodwin's testimony itself lacked credibility, noting that, among the "many problems with her testimony," she "was very clear and insis- tent that she had an absolute view, or a complete view, I should say, of that entire landing and she also said that she never saw that gun lying in the corner." 1/6/00 Tr. 18.

working for Edelin. Bidgell, who is related to Edelin, may have had reason to help the defendant by fabricating a story. Second, the investigator obtained the statement the day of trial. Third, none of the other defense witnesses corroborated Bidgell's statement that the drugs did not belong to Edelin. 996 F.2d at 1242. Similarly here, Melson made the statement to the defendant's lawyer and investigator, he had a motive as Davis's brother to lie on his behalf and, as demonstrated above, no other testimony corroborates Melson's contention that he was holding the handgun on the night of the offense. Davis suggests as a corroborating circumstance that Melson made the confession after Davis's lawyer warned him he might be subject to prosecution

and therefore he was unlikely to lie. Davis's lawyer also told Melson, however, that "the likelihood of that happening was not great." 1/6/00 Tr. 15–16. After the district court formally advised Melson of his Fifth Amendment right and he obtained advice from his own counsel, he changed his mind and decided against testifying, a fact that the district court expressly noted in rejecting the statement as not credible.[2]

---

2.  In light of our conclusion that there were no circumstances adequately corroborating either the substance of Melson's statement or the trustworthiness of the statement itself, we need not consider whether the district court

properly focused on the former rather than on the latter.