# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued May 15, 2012          Decided June 22, 2012

No. 09-3134

UNITED STATES OF AMERICA,
APPELLEE

v.

EDWINA BIGESBY,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cr-00261-1)

*Neil H. Jaffee* argued the cause for appellant. With him
on the briefs was *A.J. Kramer*, Federal Public Defender.

*Eric C. Tung*, Attorney, U.S. Department of Justice,
argued the cause for appellee. With him on the brief were
*Ronald C. Machen Jr.*, U.S. Attorney, and *Roy W. McLeese
III* and *Courtney Denise Spivey*, Assistant U.S. Attorneys.

Before: BROWN and GRIFFITH, *Circuit Judges*, and
GINSBURG, *Senior Circuit Judge*.

Opinion for the Court by *Circuit Judge* BROWN.

BROWN, *Circuit Judge*: Edwina Bigesby has been sentenced to ten years' imprisonment for various drug-related offenses. In this appeal, she contends her convictions should be vacated because the trial judge erroneously excluded evidence critical to her defense. Alternatively, she claims her sentence should be reduced under the Fair Sentencing Act. We reject both arguments, and affirm the judgment below.

I

On June 26, 2008, Metropolitan Police Department (MPD) investigator Michael Iannacchione submitted an affidavit in support of a search warrant for 1709 Trinidad Avenue NE, Apartment 1, in the District of Columbia. According to the affidavit, a confidential informant (CI) had told Iannacchione that "an individual identified as Reginald Whitaker has been selling quantities of illegal controlled substances from within and outside of 1709 Trinidad Avenue, apartment #1, Northeast, Washington DC." The CI claimed Whitaker would receive cell phone calls from customers, retrieve 14- to 28-gram packets of crack cocaine from either Apartment 1 or one of two cars parked near the apartment (a green truck and a black Honda), and sell the packets for cash.

The affidavit provided additional details supporting the CI's story: Whitaker had been arrested in 2006 at the Trinidad Avenue apartment for distribution of crack cocaine, and had been arrested one block away in 2002 for possession with intent to distribute crack cocaine; a National Comprehensive Consumer Bureau report indicated Whitaker had been associated with the apartment from June 2007 through February 2008; a second CI stated an individual had been selling illegal substances from the apartment; and surveillance confirmed that a black Honda and a green SUV were parked in front of the apartment. Based on that

information, Iannacchione declared "probable cause exists that secreted within 1709 Trinidad Avenue apartment #1 Northeast, Washington, DC., there is a quantity of illegal controlled substances[,] namely cocaine."

The affidavit mentioned Edwina Bigesby only twice. It stated that the black Honda parked in front the apartment was registered in her name; and the mailbox listed to the apartment had her name on it.

MPD officers executed the warrant on June 27, 2008. Inside the apartment, they found Bigesby and her three children, over 100 grams of crack cocaine—76 grams inside the rear of the television set, 12.3 grams in a woman's tennis shoe, 14.7 grams in a woman's purse, and 3.4 grams in a different purse—and 3.9 grams of marijuana in a plastic bag in the bedroom. They recovered 13 grams of heroin from the trunk of the black Honda parked outside. Whitaker was not in the apartment, but investigators did find some signs of his presence: a pair of men's dress shoes in the bedroom closet, mail addressed to Whitaker in the dining room, and a pair of men's athletic shoes in the trunk of the Honda.

Two months after the search, the government indicted Bigesby on charges of possession with intent to distribute 50 grams or more of crack cocaine, possession with intent to distribute heroin, and possession of marijuana. The government did not arrest or charge Whitaker.

Bigesby's trial began in July 2009. The prosecution's theory was that Bigesby jointly possessed the drugs in the apartment and the car with Whitaker, the father of two of her children. They introduced testimony that one of the purses containing cocaine also contained Bigesby's driver's license and birth certificate; that Bigesby had said during the search

that she lived in the apartment and that the drugs were her own; and that Bigesby's fingerprints were on two ceramic plates found next to various drug-related paraphernalia.

For her defense, Bigesby sought to show that Whitaker alone possessed the drugs, but her attempts to do so were purportedly limited by several rulings. The trial judge denied her motion to compel the government to produce the CIs who provided the information in the warrant affidavit. The judge also refused to admit the warrant affidavit into evidence, refused to admit self-incriminating statements Whitaker had made to Bigesby's investigator and attorney, and refused to admit evidence of Whitaker's 2002 conviction for possession with intent to distribute crack.

Without that evidence, Bigesby's defense consisted solely of the testimony of Shawnta Evans. Evans testified that Bigesby and her children had been living with her (Evans) between April and June 2008, and that Bigesby had returned to the Trinidad Avenue apartment on the day of the search just to pick up some items. Evans also testified that Whitaker had keys to the Trinidad Avenue apartment, that she had seen him outside the apartment twice in June 2008, and that she had never seen Bigesby drive the black Honda in which the heroin was found. Apparently unconvinced, the jury returned a guilty verdict on all counts.

On January 6, 2010, the trial judge sentenced Bigesby to ten years' imprisonment for the crack cocaine conviction, the mandatory minimum under 21 U.S.C. § 841(b)(1)(A). The judge sentenced Bigesby to a concurrent ten-year term on the heroin conviction, and a concurrent one-year term on the marijuana conviction. He also imposed a five-year term of supervised release.

II

Bigesby contends the trial judge improperly excluded evidence relevant to her defense and the cumulative effect of those rulings was to deny her constitutional right to present a complete defense. She also claims she is entitled to be re-sentenced under the Fair Sentencing Act, which increased the amount of crack cocaine needed to trigger a ten-year mandatory minimum sentence. We address those arguments in turn.

A

Bigesby challenges four rulings: (1) the denial of her motion to compel the government to produce the CIs; (2) the exclusion of the warrant affidavit; (3) the exclusion of Whitaker's self-incriminating statements; and (4) the exclusion of Whitaker's 2002 crack cocaine conviction. In each instance, we find the trial judge did not abuse his discretion. *See United States v. Warren*, 42 F.3d 647, 654 (D.C. Cir. 1994) (reviewing denial of motion to produce CI for abuse of discretion); *United States v. Wilson*, 160 F.3d 732, 742 (D.C. Cir. 1998) (reviewing "decision[s] to deny admission of evidence for abuse of discretion").

*1. Denial of motion to compel the government to produce the CIs.* Before trial, Bigesby moved to compel the government to disclose and produce the two CIs who had provided information used in the warrant affidavit. Bigesby argued the CIs might corroborate her theory that Whitaker solely possessed the drugs found in the search.

The trial judge denied the motion under the standard in *United States v. Gaston*, 357 F.3d 77 (D.C. Cir. 2004). The "informer's privilege" permits the government to "withhold

from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law," *Roviaro v. United States*, 353 U.S. 53, 59 (1957), and the privilege only gives way when the informer has "some sort of direct connection, either as a participant or an eyewitness, to the crime charged," *Gaston*, 357 F.3d at 84. Here, the judge determined the privilege should hold because Bigesby committed her charged crimes on the day of the search, and the CIs "were neither participants nor eyewitnesses to th[ose] crimes."

Bigesby does not challenge the judge's finding that the CIs were neither participants in nor eyewitnesses to the charged crimes. Instead, she contends the judge erred by applying *Gaston*'s "participant or eyewitness" test because the defendant in *Gaston* sought the identity of the CIs "to investigate whether the government's reliance on such sources was reasonable," 357 F.3d at 85, while she sought the identity of the CIs "to rebut the government's joint possession theory," Appellant's Br. 20.

Our precedents give no legal weight to that distinction. In *Warren*, the defendant sought the identity of a CI who had informed officers of drug sales at an apartment. Like Bigesby, the defendant "wished to argue that other occupants of the apartment on the day of the arrest were the resident drug sellers." 42 F.3d at 655. We applied the same standard we would later apply in *Gaston*, and affirmed the district court's denial of the defendant's motion because the CI had neither participated in nor witnessed the charged crimes. *Id.* at 654. We do so again here.

2. *Exclusion of the warrant affidavit.* In her opening statement, Bigesby's counsel claimed the warrant affidavit would "show . . . that there was a confidential source working

with Officer Iannacchione." The government objected, and at the subsequent bench conference, argued that if the judge eventually admitted the affidavit into evidence, then he should also admit: (1) statements from the CIs that they had observed Bigesby selling drugs in the past; and (2) evidence that MPD officers had observed Bigesby engaging in suspicious drug-related behavior in 2007. The trial judge agreed, warning Bigesby's counsel that if she persisted in referencing the warrant affidavit, she would "open[] the door" to the government's additional evidence. Bigesby's counsel opted not to mention the warrant affidavit in the remainder of her opening statement.

The next day, during her cross-examination of Officer Iannacchione, Bigesby's counsel once more attempted to reference statements in the warrant affidavit. When the prosecution objected, Bigesby's counsel argued the affidavit was admissible hearsay. The trial judge repeated his warning that if he admitted the affidavit, he likely would have to admit the government's additional evidence as well. After noting that both the affidavit and the government's evidence were only marginally relevant, the judge chose to exclude both.

Bigesby now argues the trial judge abused his discretion by excluding the statements in the warrant affidavit. She claims the statements were non-hearsay adoptive admissions under Federal Rule of Evidence 801(d)(2)(b), and were relevant because they made it less probable that Bigesby possessed the drugs found in her apartment. The government concedes both points, *see* Appellee's Br. 48, but submits the judge reasonably excluded the statements under Federal Rule of Evidence 403 because they were more prejudicial than probative.

We agree. The affidavit's probative value was limited because it proved, at most, that the government believed Whitaker was dealing drugs from the Trinidad Avenue apartment before it conducted the search. By contrast, the affidavit had a potentially prejudicial effect. If the judge had admitted the affidavit but excluded the government's Rule 404(b) evidence about Bigesby, it could have fostered the impression that, before conducting the search, the government believed Whitaker *alone* had been dealing drugs from the apartment. That "would have made it easier for the jury to lay the blame on [Whitaker] for the drug deal despite evidence presented at trial." *United States v. Lucas*, 357 F.3d 599, 606 (6th Cir. 2004). If, on the other hand, the judge had agreed to admit the government's 404(b) evidence to counter the affidavit, it could have distracted the jury from the issue at hand. *See Duran v. Town of Cicero*, 653 F.3d 632, 645 (7th Cir. 2011) (affirming judge's exclusion of 404(b) evidence because of the threat of "creating a sideshow and sending the trial off track"). Faced with those options, the judge did not abuse his discretion by excluding the affidavit.

*3. Exclusion of Whitaker's self-incriminatory statements.* At trial, Bigesby sought to introduce the testimony of her private investigator that Whitaker had admitted shortly before the trial began "that the cocaine and the heroin was his and that Ms. Bigesby knew nothing about it." The government responded that it had given Whitaker "multiple opportunities" to meet, and that he had passed up each one. The government also claimed the circumstances surrounding the statement did not corroborate it, as required by Federal Rule of Evidence 804(b)(3). The judge sided with the government, stating he did not "believe the circumstances sufficiently indicate[d] trustworthiness."

Under the version of Rule 804(b)(3) in effect during the trial, a statement is admissible as non-hearsay if "(1) the declarant was unavailable, (2) the statement was against the declarant's interest, and (3) corroborating circumstances clearly indicate the trustworthiness of the statement." *United States v. Moore*, 651 F.3d 30, 82 (D.C. Cir. 2011). Bigesby bore the burden of proving the statement met each requirement. *Id.*

The trial judge reasonably found Bigesby had not met her burden of proof on the third requirement. In *United States v. Edelin*, 996 F.2d 1238 (D.C. Cir. 1993), we addressed the exclusion of a statement from a third party (Bidgell) that the drugs at issue belonged only to him, not to the defendant (Edelin). We affirmed the district court's ruling that there was a lack of corroborating circumstances because:

> First, Bidgell gave the statements to a defense investigator who he knew was working for Edelin. Bidgell, who is related to Edelin, may have had reason to help the defendant by fabricating a story. Second, the investigator obtained the statement the day of trial. Third, none of the other defense witnesses corroborated Bidgell's statement that the drugs did not belong to Edelin.

*Id.* at 1242.

Those considerations support the ruling below. Whitaker admitted his sole ownership of the drugs to Bigesby's investigator and attorney, who he knew were in a position to help her, and he had reason to help her because he was the father of two of her children. And Whitaker provided the statement a month before trial—more than a year after

Bigesby's arrest, and more than nine months after the government had started trying to meet with him. In light of the similarities between the circumstances here and in *Edelin*, we find the judge did not abuse his discretion by excluding Whitaker's admission.

*4. Exclusion of Whitaker's prior conviction.* Before trial, the judge denied the government's motion to introduce evidence under Federal Rule of Evidence 404(b) that officers had stopped and interrogated Bigesby in July 2007 after observing her engaging in what appeared to be a drug transaction. The judge found the proffered evidence to be "of little, if any relevance to the material issues in the case" because of "the significant time lapse, almost a full year, between the [stop] and the events underlying the case." He ruled the evidence inadmissible because its "prejudicial [effect] . . . substantially outweigh[ed] its probative value."

Later, during trial, the judge denied Bigesby's request under Rule 404(b) to introduce Whitaker's 2002 conviction for possession with intent to distribute crack cocaine. The judge warned Bigesby that if he agreed to admit Whitaker's prior conviction, he "would probably have to re-evaluate" his pre-trial exclusion of the evidence relating to Bigesby's 2007 stop and interrogation. He concluded that "the cleanest thing to do" was to simply deny Bigesby's request.

The judge's ruling was within his discretion under Rule 403. The six-year gap between Whitaker's conviction and the discovery of drugs at the Trinidad Avenue apartment limited the conviction's probative value. And just as with the warrant affidavit, Whitaker's conviction had a potentially prejudicial effect whether the judge had chosen to admit the government's 404(b) evidence to counter it, or had chosen to exclude that evidence. *See supra* II.A.2.

Because we find the trial judge did not abuse his discretion with any of the four challenged rulings, we need not reach Bigesby's claim that the judge's errors deprived her of her constitutional right to present a complete defense.

B

As a fallback, Bigesby argues she is entitled to a reduced sentence under the Fair Sentencing Act (FSA), which increased the quantity of crack cocaine needed to trigger the ten-year mandatory minimum in 21 U.S.C. § 841(b)(1)(A). But Bigesby cannot benefit from the FSA because it was enacted eight months after her January 2010 sentencing, and it is not retroactive.

The general savings statute provides that "[t]he repeal of any statute shall not have the effect to release or extinguish any penalty . . . incurred under such statute, unless the repealing Act shall so expressly provide." 1 U.S.C. § 109. We agree with every circuit court to address the issue that there is simply "no evidence that Congress intended the [FSA] to apply to defendants who had been sentenced prior to the August 3, 2010 date of the Act's enactment." *United States v. Baptist*, 646 F.3d 1225, 1229 (9th Cir. 2011) (per curiam) (citing decisions from every circuit court except this one and the Federal Circuit).

Bigesby claims we should deviate from our sister circuits, but her arguments are unpersuasive. She contends Congress expressed its preference for retroactivity when it gave the Sentencing Commission authority to promulgate emergency amendments to implement the FSA, but "Congress's desire to have the FSA implemented quickly in no way suggests that it also intended to have the Act apply retroactively to defendants sentenced before it was passed." *United States v.*

*Bullard*, 645 F.3d 237, 248 (4th Cir. 2011). She argues that not giving the FSA retroactive effect raises equal-protection concerns, but any such concerns are resolved by Congress' rational basis for limiting the FSA's retroactive effect—its "interest in the finality of sentences." *United States v. Johnson*, 544 U.S. 295, 309 (2005). Finally, Bigesby asserts that "a new rule for the conduct of criminal prosecutions is to be applied retroactively," *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987), but that Supreme Court pronouncement only applies to judicially created rules, not statutory amendments like the FSA, *see id.* at 322–23.

## III

Because the trial judge did not improperly exclude evidence relevant to Bigesby's defense, and because Bigesby is not entitled to re-sentencing under the FSA, the sentence imposed below is

*Affirmed*.