# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 12, 2012      Decided November 9, 2012

No. 09-3137

UNITED STATES OF AMERICA,
APPELLEE

v.

THOMAS FIELDS,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cr-00299-1)

*Tony Axam, Jr.*, Assistant Federal Public Defender, argued the cause for appellant. With him on the briefs was *A.J. Kramer*, Federal Public Defender. *Neil H. Jaffee*, Assistant Federal Public Defender, entered an appearance.

*John L. Hill*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Ronald C. Machen, Jr.*, United States Attorney, and *Roy W. McLeese III* and *John P. Mannarino*, Assistant U.S. Attorneys. *Elizabeth Trosman,* Assistant U.S. Attorney, entered an appearance.

Before: HENDERSON and TATEL, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Convicted of distribution and possession with intent to distribute crack cocaine, appellant was sentenced before Congress passed the Fair Sentencing Act of 2010 (FSA), which reduced the disparity between the treatment of crack and powder cocaine. Appellant now claims that the FSA applies retroactively to him and that the district court erred in denying his motion to postpone sentencing until after passage of the Act. He also challenges the district court's decision to impose two additional years of incarceration for his perjury at trial. For the reasons set forth below, we affirm.

**I.**

Appellant, Thomas Fields, allegedly sold crack cocaine to a government agent on two occasions: 27.4 grams the first time and 115 grams the second time. When arrested a few months later, Fields had an additional 71.3 grams of crack packaged for sale. The police also discovered a nine-millimeter handgun in one of his residences. A grand jury indicted Fields for distribution and possession with intent to distribute 50 grams or more of cocaine base (crack), distribution of five grams or more of cocaine base, and unlawful possession of a handgun. *See* 18 U.S.C. § 922(g)(1) (unlawful possession of a firearm); 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii), 841(b)(1)(B)(iii) (2006) (possession with intent to distribute and distribution of cocaine base).

At trial, both Fields and his wife testified that they were in the business of making and selling "scented rocks." The business was apparently quite unsuccessful, as neither Fields nor his wife could identify anyone who had purchased their rocks. According to Fields, he gave the informant scented rocks, not crack cocaine, and the money the informant gave him was payment for gambling debts.

The jury convicted Fields for distributing 50 grams or more of crack and for possessing with intent to distribute another 50 grams or more, but was unable to reach a verdict regarding the distribution of the additional five grams. The jury was also unable to reach a verdict on the unlawful possession of the gun charge. On the government's motion, the district court dismissed the charges on which the jury hung.

Under the Controlled Substances Act, 21 U.S.C. §§ 801 et seq., and the related Sentencing Guidelines, § 2D1.1, a drug trafficker dealing in crack cocaine at the time of Fields's conviction was subject to the same sentence as one dealing in 100 times as much powder cocaine. *Kimbrough v. United States*, 552 U.S. 85, 91 (2007). The Supreme Court has held that "the cocaine Guidelines, like all other Guidelines, are advisory only" and that sentencing courts may conclude that the crack-to-powder disparity yields a sentence greater than necessary "even in a mine-run case." *Id.* at 91, 109. The Controlled Substances Act, however, imposed a ten-year mandatory minimum prison sentence for those convicted of offenses involving 50 grams or more of crack cocaine, and, as the Supreme Court explained in *Dorsey v. United States*, 132 S. Ct. 2321, 2327 (2012), sentencing courts generally have no authority to go below the mandatory minimum.

Although Fields was scheduled for sentencing on July 8, 2009, he filed a motion to postpone sentencing for four months. Fields argued that he needed more time to discover additional evidence regarding a prior state court conviction. He also wanted sentencing postponed until after passage of then pending legislation addressing the disparate treatment of crack and powder cocaine. The district court granted the

motion on the first ground, making it clear that it would not have done so merely because of the pending legislation:

> Well, the truth of the matter is that if I sentence him today and you file a notice of appeal, and Congress changes the law while the appeal is pending, based on our history with Booker and Terence Coles in the D.C. Circuit, as long as there's an appeal pending he may well get the benefit of any change of law. He wouldn't on collateral attack most likely. But I don't know why you think Congress is going to change the law in four months. . . . I'm certainly not going to postpone every crack sentencing until Congress acts, because none of us knows when Congress acts, whether it's going to act, what they're going to do.

Hr'g Tr. 4-6 (July 8, 2009). The court also said, "I believe, but don't know for sure, that if Congress were to act while this case were on appeal, you might well get the benefit of it anyway." Hr'g Tr. 22 (July 8, 2009).

Several months later, while granting a second continuance, the district court shared its thoughts on Fields's sentence. The court indicated that the applicable Guidelines range for Fields's convictions was 235 to 293 months, including enhancements for possession of a firearm and obstruction of justice. The court explained that it imposed the enhancements because it determined by a preponderance of the evidence that Fields had possessed the handgun and perjured himself at trial. *See United States v. Settles*, 530 F.3d 920, 923 (D.C. Cir. 2008) ("[A] sentencing judge may consider uncharged or even acquitted conduct in calculating an appropriate sentence, so long as that conduct has been proved by a preponderance of the evidence and the sentence does not exceed the statutory maximum for the crime of

conviction."). Reiterating its disagreement with the crack-powder disparity, *see United States v. Lewis*, 623 F. Supp. 2d 42, 45 (D.D.C. 2009) (Friedman, J.) (explaining that the court "will apply the 1-to-1 ratio in all crack cocaine cases that come before it for sentencing in the future"), the court determined that under a one-to-one crack-to-powder calculation—that is, applying the Guidelines as if Fields had been convicted of offenses involving powder cocaine—his sentencing range would be 51 to 63 months, including the two enhancements. But because the mandatory minimum trumped this range, "[Fields] doesn't get punished for perjuring himself." Hr'g Tr. 9 (Oct. 29, 2009). The court explained that the Guidelines range for violations of the perjury statute, 18 U.S.C. § 1621, would be 21 to 27 months incarceration for an offender with Fields's characteristics and that it was considering adding this sentence to the ten-year mandatory minimum. Hr'g Tr. 9-10 (Oct. 29, 2009).

Denying a third motion for a continuance, the district court sentenced Fields to two concurrent terms of 144 months imprisonment—the mandatory minimum for each offense plus 24 months for perjury. In doing so, the court explained: "It seems to me that I am trumped by what Congress has done in terms of the mandatory minimum, and I'm stuck with that, and I can't do anything about it. But to permit a defendant to come in knowing in advance that if he's convicted there will be ten years, and therefore any perjury is free and can't be punished and won't be punished, just strikes me as wrong, and strikes me as being an affront to the judicial process and the judicial system." Hr'g Tr. 31 (Dec. 11, 2009).

Some eight months after Fields's sentencing, on August 3, 2010, Congress enacted the Fair Sentencing Act, which reduced the crack-to-powder cocaine disparity from 100-to-1 to 18-to-1 by increasing the quantity of crack needed to trigger

the ten-year mandatory minimum. *Dorsey*, 132 S. Ct. at 2326. As amended, the statute now prescribes a mandatory minimum sentence of five years for offenses involving at least 28 grams of crack and ten years for offenses involving 280 or more grams. *See* Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2, 124 Stat. 2372, 2372 (amending 21 U.S.C. § 841).

On appeal, Fields presses three arguments: that the FSA applies to him because his case was on appeal when the Act was passed, that the district court abused its discretion in refusing to postpone sentencing until after passage of the FSA, and that the district court erred substantively and procedurally by adding the additional sentence for perjury to the mandatory minimum. We consider each argument in turn.

## II.

We can easily dispose of Fields's first argument. In *Dorsey*, the Supreme Court held that the more lenient penalties imposed by the FSA apply to offenders who committed crimes before the statute's passage but were sentenced afterwards. 132 S. Ct. at 2326. And in *United States v. Bigesby,* 685 F.3d 1060, 1066 (D.C. Cir. 2012), we squarely held that the FSA is inapplicable to offenders, like Fields, who were sentenced before passage of the statute. At oral argument, however, Fields's counsel equivocated between conceding that we were bound by *Bigesby*, decided the day after the Supreme Court's ruling in *Dorsey*, and disputing "the reasoning of *Bigesby* in light of *Dorsey* because *Dorsey* . . . clearly indicates that the savings clause does not prohibit retroactivity of certain parts of the Fair Sentencing Act." Oral Arg. Rec. 18:10-:28. Whatever merit this argument might otherwise have, *Dorsey* actually confirms our decision in *Bigesby*, for the Court expressly acknowledged that it was creating a disparity "between pre-Act offenders sentenced

before August 3 and those sentenced after that date." 132 S. Ct. at 2335. Although this is dictum, "carefully considered language of the Supreme Court, even if technically dictum, generally must be treated as authoritative." *United States v. Oakar*, 111 F.3d 146, 153 (D.C. Cir. 1997) (internal quotation marks omitted).

To be sure, the FSA, as interpreted by *Dorsey*, produces a certain degree of arbitrariness. Individuals who commit the same offense on the same day may receive different sentences based purely on when they are sentenced—a date determined by the vagaries of the judicial system and not anything related to the goals of sentencing. But "disparities, reflecting a line-drawing effort, will exist whenever Congress enacts a new law changing sentences." *Dorsey*, 132 S. Ct. at 2335.

Fields's challenge to the district court's refusal to postpone sentencing until after passage of the FSA also fails. According to Fields, the district court denied his motion on the basis of the mistaken notion that Fields would get the benefit of the FSA so long as his case was pending on appeal at the time the statute was enacted. Had the district court truly denied the continuance for this reason, that might well have amounted to an abuse of discretion. *See Kellmer v. Raines*, 674 F.3d 848, 851 (D.C. Cir. 2012) ("[B]y definition, a district court abuses its discretion when it makes an error of law." (internal quotation marks omitted)). But the district court explained that it was uncertain whether the FSA would apply to Fields and that it saw no reason to "postpone every crack sentencing until Congress acts, because none of us knows when Congress acts, whether it's going to act, what they're going to do." Hr'g Tr. 6 (July 8, 2009). As we have previously held, this represents a perfectly adequate reason for denying a continuance. *United States v. Lawrence*, 662 F.3d 551, 553 (D.C. Cir. 2011) ("Pending legislation is far too removed for

this court to compel district courts to consider at sentencing . . . .").

Fields makes an array of arguments relating to the 24 month addition to his sentence for perjury. In reviewing properly preserved sentencing challenges for abuse of discretion, we ask whether the district court committed any "'significant procedural error, such as . . . selecting a sentence based on clearly erroneous facts.'" *Id.* at 556 (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)) (alteration in original). We also consider the sentence's "substantive reasonableness," "tak[ing] into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 552 U.S. at 51.

Fields argues that the district court double-counted his trial perjury by adding a term of imprisonment to the mandatory minimum sentence after already applying the obstruction of justice enhancement in calculating the two Guidelines ranges. The district court did no such thing. Although the court did factor the perjury into its calculation of the Guidelines ranges, the ten-year mandatory minimum would have been the same for any defendant convicted of offenses involving an identical quantity of crack, irrespective of the perjury. In other words, as the district court explained, "because of the ten year mandatory minimum, even though [the perjury is] factored into the guidelines, it's not separately punished." Hr'g Tr. 32 (Dec. 11, 2009).

Nor do we detect any abuse of discretion in the district court's decision to add two years for perjury. As the Supreme Court has held, a sentencing judge may "give consideration to the defendant's false testimony observed by the judge during the trial." *United States v. Grayson*, 438 U.S. 41, 42 (1978); *see also United States v. Dunnigan*, 507 U.S. 87 (1993).

According to Fields, "imposing a separate penalty under [the perjury statute] provides no additional general deterrence because a future defendant considering perjury would already be subject to a prosecution under that statute, albeit, with the benefit of his constitutional trial rights." Appellant's Br. 22. Although the threat of a separate prosecution on a perjury charge may deter prospective perjury, the threat of a sentencing addition on the underlying charge may deter it at least as effectively. The presence of one hardly undermines the effectiveness of the other, and Fields has raised no constitutional objection to using his sentence to deter future defendants from perjuring themselves.

Next, Fields argues that because an obstruction of justice enhancement would have added only approximately 12 months under a one-to-one Guidelines calculation, the district court erred by adding the 24 months. Fields also challenges the additional 24 months on the grounds that his sentence was already greater than it should have been due to the unfair mandatory minimum. The district court never explained why it added 24 months instead of 12 for one simple reason: Fields failed to argue in the district court that 12 months was more appropriate than 24. Furthermore, as the government points out, Fields received the benefit of a significant downward variance from the Guidelines range of 235 to 293 months in effect at the time of his sentencing. As we have explained, a within-Guidelines sentence is presumptively reasonable. *United States v. Dorcely*, 454 F.3d 366, 376 (D.C. Cir. 2006). Under these circumstances, Fields's sentence could hardly be considered substantively unreasonable. *See United States v. Mejia*, 597 F.3d 1329, 1343 (D.C. Cir. 2010) (finding it "hard to imagine" sentence was substantively unreasonable when sentence was "two years *below* the range we ordinarily view as reasonable"). We appreciate that Fields believes the ten-year mandatory minimum was unfair and that Congress

apparently agreed, at least with respect to defendants sentenced after the FSA's enactment.  But given that the FSA does not apply to Fields, its subsequent enactment can have no effect on the reasonableness of his sentence.

## III.

For the reasons stated above, we affirm.

*So ordered.*